In re the MARRIAGE OF Bodo
SCHNEIDER, Appellant,

and

Stephanie C. Schneider, Appellee.

No. 91CA0216.

Colorado Court of Appeals,
Div. IV.

April 23, 1992.

Samuel R. Escamilla, Westminster, for appellant.

Canges & Iwashko, P.C., Nina A. Iwashko, Jo Lauren Seavy, Denver, for appellee.

Opinion by Judge CRISWELL.

Bodo Schneider (father) appeals from the trial court's order finding him in contempt of court for refusing to pay maintenance and child support to Stephanie Schneider (mother) and ordering his imprisonment until he purges himself of that contempt. We affirm, but remand for more specific findings as to the amount required to be paid in order for the father to purge himself.

I.

Relying upon the opinion in *In re Marriage of Woodrum*, 618 P.2d 732 (Colo. App.1980), the father first contends that, because the mother had activated a wage assignment under § 14–14–107, C.R.S. (1987 Repl.Vol. 6B), she could not also pursue a remedial contempt order. Such reliance is misplaced.

In *Woodrum*, after the court-ordered payments had been reduced to judgment at the wife's request, the trial court entered a remedial contempt order. In doing so, however, that court authorized the husband to discharge his arrearage liability by making installment payments. A division of this court noted that the entry of the judgment for arrearages gave to the wife the "full panoply of rights of execution that any judgment creditor possesses," while the court's contempt order improperly restricted those rights. In the context of that immediate factual circumstance, this court concluded that a court may generally enforce compliance with its unsatisfied orders through use of its remedial contempt powers, but, once the obligee requests the entry of a judgment and such judgment is entered, then the two remedies must be looked upon, not as duplicative, but as alternative, so that remedial contempt orders may not thereafter be entered.

Standing in contrast to *Woodrum*, in which a formal judgment for arrearages had been entered, is *People in Interest of G.S.*, 678 P.2d 1033 (Colo.App.1983), in which, like the instant case, only a statutory wage assignment had been instituted. In spite of the existence of such wage assignment, a division of this court held that, until a formal judgment for arrearages is entered, child support obligations can also be enforced through remedial contempt proceedings.

Here, while the mother had instituted the statutory wage assignment proceedings before the court entered its remedial contempt orders, no judgment for the arrearages has ever been entered. Hence, at the time of the entry of the remedial contempt orders, the mother was not entitled to exercise any of the rights of a judgment credi-

tor, and the contempt orders did not purport to restrict any of her rights under the wage assignment statute. Under these circumstances, the alternative remedy rationale of *Woodrum* did not apply so as to prohibit the mother from seeking, or the trial court from entering, the remedial contempt order at issue here.

## II.

We also reject the father's claim that the court committed reversible error in allowing the mother to present the testimony of the father's lawyer.

We should first note that the father, as the appellant, has failed to provide a complete record upon this point; his motion to quash the subpoena duces tecum served upon his counsel was not made a part of the record on appeal. *See* C.A.R. 10(b); *People v. Velarde,* 200 Colo. 374, 616 P.2d 104 (1980) (it is duty of appellant to do all things necessary to provide appellate court with necessary record).

Nevertheless, considering the record before us, we conclude that the father's objection to his counsel's testimony was apparently based solely upon the attorney-client privilege as set out in § 13–90–107(1)(b), C.R.S. (1987 Repl.Vol. 6A). In the trial court, the father did not refer to Code of Professional Responsibility DR 5–102(B), which requires an attorney to withdraw from representing a client if "it is apparent that his testimony is or may be prejudicial to his client." Indeed, this record is barren of any request by the father's attorney to withdraw as his counsel at any time, either before or after testifying, and the same counsel is still representing the father on this appeal.

Hence, we need not decide whether the rationale of *Williams v. District Court,* 700 P.2d 549 (Colo.1985), which involved a criminal prosecution and which relied upon DR5–102(B), is also applicable in civil actions. *See Dorador v. Cronin,* 199 Colo. 85, 605 P.2d 53 (1980) (appellate court will not decide issues not raised in the trial court).

■ The attorney's testimony here, which was limited to a description of the amounts received by counsel from the father during the time that the father was refusing to pay maintenance or child support, did not implicate any communication privileged under § 13–90–107(1)(b). The privilege created by that statute extends only to matters communicated by the client to the attorney. *See People v. Tippett,* 733 P.2d 1183 (Colo.1987).

Such privilege does not extend to the disclosure of the payment of fees, unless such disclosure would, by its nature, reflect the subject matter of a communication that has not previously been disclosed. *See United States v. Hodgson,* 492 F.2d 1175 (10th Cir.1974).

Because the nature of counsel's representation here was known, testimony as to the fees paid by the father for such representation was not privileged under the statute.

## III.

■ The father also argues that there was insufficient evidence to sustain the trial court's finding of contempt and that the contempt order was not sufficiently definite to allow him to purge himself as the court's order contemplated. While we conclude that there was evidentiary support for the contempt finding, we also conclude that the order was not specific enough to allow the father to comply with its terms before the deadline for such compliance had passed.

### A.

The temporary support and maintenance orders, requiring the father to pay a total of $2,000 per month, were entered orally on in May and reduced to writing in June 1990. The father, who is an emergency room physician, was employed by a corporation of which he was president, until April or May of that year. That corporation contracted to provide emergency room services to hospitals. Starting in July 1990, he was employed by a different corporation which contracted to provide similar services to a hospital in Illinois.

From March 1, 1990, through August 30, 1990, the father's Colorado corporation had deposited to its bank accounts a total of some $296,229. While substantially all of these sums were withdrawn by the father, who was the only person who could write checks on the corporate accounts, he provided no detailed accounting as to where these sums went.

From August 1, 1990, through the date of the hearing on the contempt citation (December 2, 1990), the father's employment in Illinois earned him an additional $46,000 (net).

Further, the evidence indicated that, during this period, the father made payments on the vehicle he was driving, continued to maintain a household in Colorado (although he was there only three or four days a month), spent substantial sums for entertainment at a local private club, paid fees to his attorney and a bondsman, and vacationed in Mexico.

Yet, during the entire period of time, the father paid to the mother for maintenance and support a total of only $1,100 (exclusive of two monthly payments under the wage assignment) from June through December 2, 1990. The evidence reflects that he offered to pay the mother an additional $6,000, but conditioned such offer on the mother's withdrawal of the contempt citation.

This evidence clearly supports the trial court's finding that the father had the ability to comply with the court's orders and that his refusal to do so was willfully disobedient.

### B.

After the final evidentiary hearing on December 20, 1990, the trial court orally found the father in contempt and directed that, unless he paid all arrearages in full, together with the mother's attorney fees incurred in conjunction with the contempt proceedings, by December 27, he would be confined in the county jail. However, although at the time of the hearing the court estimated that the arrearages amounted to more than $11,000, it made no findings either as to the amount of arrearages or the amount of attorney fees that the father would be required to pay.

In a written order of December 21, the court restated its previous findings, directed that the mother file an affidavit delineating the amount of her attorney fees (but set no date for the filing of the same), and authorized the father to have a further hearing upon the question of the amount of such fees if he objected to the amount set forth in the mother's affidavit. This written order, however, still did not state the amount of arrearages that the father would be required to pay by December 27 in order to purge himself of contempt.

Thus, while the contempt order required the father to pay both arrearages and attorney fees by December 27 or be incarcerated, it did not advise the father of the amount he was required to pay.

On January 2, 1991—nearly a week after the deadline provided to the father for purging himself of contempt—the court entered a written order stating that the amount of arrearages as of December 20, 1990, was $7,150. This figure may well be accurate, but the record does not reveal the numerical factors used by the court in its computations, and we have been unable to compute this same figure by using the evidence of record. Finally, the present record does not contain either an affidavit respecting the amount of attorney fees or any objection thereto.

Under these circumstances, while we conclude that the trial court's findings that the father willfully disobeyed an order of court and that he had the present ability to pay are supported by the record, we also conclude that the provisions allowing the father to purge himself of such contempt to be so indefinite as to be unenforceable. Thus, remand for additional findings is required.

### IV.

In light of our disposition of the foregoing issues, it is unnecessary for us to address any of the father's other claims of error.

The judgment of contempt is affirmed, and the cause is remanded to the trial court with directions to make further findings with respect to the amount of arrearages and the amount of attorney fees which father shall be required to pay (if such amount has not yet been established) and to set a new date before which the father must pay such amounts in order to purge himself of the contempt found.

MARQUEZ and NEY, JJ., concur.