Jessie AREVALO; Lindsey Griffith; Bill Pemberton; Robert D. Yeager; Lawrence C. Stapleton; Elain Lamm, by her next friend Argentina Stein; Lash L. Jackson; and Kathy Edminston, individually and on behalf of others similarly situated, Plaintiffs–Appellees,

v.

COLORADO DEPARTMENT OF HUMAN SERVICES and Marva Hammons, in her official capacity as the executive director of the Colorado Department of Human Services, Defendants–Appellants.

No. 01CA0769.

Colorado Court of Appeals, Div. II.

May 8, 2003.

Law Office of Kathleen Mullen, P.C., Kathleen Mullen, Denver, Colorado, for Plaintiffs–Appellees.

Ken Salazar, Attorney General, Wade S. Livingston, First Assistant Attorney General, Denver, Colorado, for Defendants–Appellants.

Opinion by Judge NEY.

Defendants, Colorado Department of Human Services and Marva Hammons, in her official capacity as the Executive Director of the department, appeal several orders of the trial court in favor of the plaintiff class. We dismiss the appeal in part and otherwise affirm.

The history of this class action litigation is set forth in *Goebel v. Colorado Department of Institutions,* 764 P.2d 785 (Colo.1988), and *Goebel v. Colorado Department of Institutions,* 830 P.2d 1036 (Colo.1992).

In 1994, the parties entered into a settlement agreement, which was approved by the court. At the same time, the parties prepared a services plan, which detailed the services to be provided to plaintiffs.

In 1997, plaintiffs filed a motion to enforce specific provisions of the settlement agreement and the services plan. The trial court initially concluded that defendants' obligations under the services plan that were not contained in the settlement agreement were not specifically enforceable, and it limited plaintiffs' enforcement action to defendants' obligations contained in the settlement agreement.

Plaintiffs appealed this order, pursuant to a C.R.C.P. 54(b) certification. A division of this court reversed the trial court and held that obligations contained in the services plan were also specifically enforceable. *See Arevalo v. City & County of Denver,* (Colo. App. No. 98CA0349, July 1, 1999)(not published pursuant to C.A.R. 35(f)).

However, pending that appeal, the trial court retained jurisdiction over the obligations under the settlement agreement that it had concluded were specifically enforceable.

On October 20, 1999, the trial court ordered defendants to specifically perform several obligations required by the settlement agreement, including obligations not raised in plaintiffs' initial motion. The trial court denied defendants' motion to certify this order under C.R.C.P. 54(b) because the ruling did not finally dispose of a single claim for relief and the certification would fracture and complicate the case further.

On March 31, 2001, the trial court, upon plaintiffs' motion, found defendants in contempt for failing to abide by the terms of the October 20, 1999 order. In the same order and in response to the opinion of a division of this court, the trial court ordered defendants to perform the obligations under the services plan that had not been previously considered by the trial court.

Subsequent to the March 31, 2001 order, based on evolving facts, the trial court issued further orders that modify, add, and vacate defendants' responsibilities pursuant to the settlement agreement.

## I.

Defendants contend the trial court erred in ordering specific performance in both the October 20, 1999 and March 31, 2001 orders. We decline to address this argument because we conclude that these orders are not final and therefore we are without jurisdiction to consider them.

Our jurisdiction is limited to the review of final orders. Section 13–4–102(1), C.R.S. 2002; C.A.R. 1(a).

▮ The parties cannot confer subject matter jurisdiction upon this court by their consent. *Sanchez v. Straight Creek Constructors,* 41 Colo.App. 19, 580 P.2d 827 (1978).

▮ A trial court and an appellate court cannot hold concurrent jurisdiction to determine substantive matters that directly affect the judgment of the trial court. *See People v. Dillon,* 655 P.2d 841 (Colo.1982).

▮ Accordingly, we must determine whether the trial court's orders of specific performance were final and invest us with jurisdiction to consider their contents, or

whether those orders were not final and left the trial court with jurisdiction to modify them. We conclude that the orders of specific performance were not final and that the trial court retained jurisdiction over their substantive contents.

The enforcement proceedings in the trial court are based on the terms of the settlement agreement. The agreement provides that, "if the plaintiffs believe that ... Defendants have failed to substantially perform their obligations ... the plaintiffs may apply to the Court for a hearing to enforce the obligation(s)." It continues:

> If, after hearing, the Court finds that ... one or more of defendant(s) have failed to substantially comply, the Court shall issue an Order directing specific performance of the Agreement and, if the Defendant(s) fail(s) to comply with this Order, the Court shall, if appropriate under applicable legal principles, issue an Order of contempt and other Orders within its power for Defendant's failure to substantially comply with the Court's order of specific performance.

Thus, the trial court has, in effect, a continuing supervisory role in the enforcement of the settlement agreement and services plan and, upon plaintiffs' motion, continues to have authority to order further specific performance and modify and vacate previous orders of specific performance.

It is unclear on the face of the settlement agreement whether the parties envisioned this continuous supervisory role for the trial court.

Generally, our interpretation of the terms of a contract is de novo. *Harwig v. Downey,* 56 P.3d 1220 (Colo.App.2002). However, interpretation of settlement agreements that provide for enforcement by the trial court is not governed by the same standard. Instead, deference should be given to the trial court that approved the settlement agreement in its subsequent construction of its enforcement role. *See Halderman v. Pennhurst State School & Hospital,* 901 F.2d 311 (3d Cir.1990); *see also United States v. Knote,* 29 F.3d 1297 (8th Cir.1994).

Thus, because it maintains jurisdiction to modify its enforcement orders and has not certified these orders pursuant to C.R.C.P. 54(b), we conclude that its orders enforcing the obligations under the settlement agreement and services plan are not final.

The parties rely upon *Schnier v. District Court,* 696 P.2d 264 (Colo.1985), for support of their assertion that the orders of specific performance are reviewable by this court. In *Schnier,* the supreme court held that the trial court retained jurisdiction to consider a contempt motion brought after a notice of appeal had been filed.

However, we find *Schnier* distinguishable on the facts. In *Schnier,* the trial court's subsequent order did not modify any of the substantive obligations under the earlier order. However, here, the trial court's orders affected the substantive issues presented for review by modifying and vacating certain of defendants' responsibilities. As a result, the parties' responsibilities are in a state of flux subsequent to the filing of the notice of appeal, and, thus, the orders cannot be considered final.

We are cognizant of defendants' contention that this conclusion may prevent the timely appellate review of the trial court's orders. However, the parties' intentions as indicated by the trial court's interpretation of the settlement agreement, and their actions pursuant to the trial court's supervisory role, indicate their consent to this superior function of the trial court in enforcing the agreement. Furthermore, defendants' assertion ignores the point that appellate review of the orders would raise collateral estoppel questions regarding the validity of any subsequent trial court orders interpreting the terms of the settlement agreement. Thus, even if we had jurisdiction, judicial restraint would suggest that we decline to create such disarray and uncertainty.

Accordingly, we conclude that we do not have jurisdiction to review the trial court's interpretation and enforcement of the settlement agreement until the trial court either certifies its particular orders as final pursuant to C.R.C.P. 54(b) or issues an order that outlines the parties' exact responsibilities pursuant to the settlement agreement and services plan and does not allow the court to

further modify or vacate these responsibilities. Additionally, it should be noted that once such a final order is issued or certified by the trial court and the parties appeal that order, any subsequent order concerning the settlement agreement and the services plan by the trial court would be void for lack of jurisdiction, until this court remands the case to the trial court.

## II.

Defendants contend that the trial court's March 31, 2001 order finding the department in contempt is contrary to the evidence. We disagree.

We have jurisdiction to review the contempt portions of the March 31, 2001 order. *See* C.R.C.P. 107(f) ("For the purposes of appeal, an order deciding the issue of contempt and sanctions shall be final.")

■ The finding of contempt is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of this discretion. *Conway v. Conway,* 134 Colo. 79, 299 P.2d 509 (1956); *People v. Mulberry,* 919 P.2d 835 (Colo.App.1995).

■ To find a party in contempt for violation of a lawful order of which the party is aware, the trial court must find that: (1) the party did not comply with the order; (2) the party's refusal to comply with the order was willful; and (3) the party had the ability to comply with the order. *See In re Boyer,* 988 P.2d 625 (Colo.1999). If the contempt order is intended to be remedial in nature, the trial court must find that the party is presently able to comply as well. *In re Estate of Elliott,* 993 P.2d 474 (Colo.2000).

■ Here, the trial court found that an order of contempt was proper because the department failed to comply with the October 20, 1999 order of specific performance. Specifically, the trial court found that the department failed to: (1) fill the group homes and congregate apartments with appropriate class members by December 15, 1999; (2) fill the remaining twenty-five units of unused section 8 housing by December 15, 1999; (3) design a comprehensive plan to identify, track, and wait-list board and care and homeless class members by December 15, 1999 and implement such plan with regard to homeless class members; and (4) comply

with the staffing requirements. Furthermore, the trial court found that the department both previously and presently had the ability to comply with the order of specific performance and that its actions in not complying were willful.

We conclude that these findings are supported by competent evidence and are not contrary to law. The department admitted in the trial court that: (1) the group homes and congregate apartments were not filled by the deadline; (2) the additional section 8 units were not filled by the deadline; and (3) adequate staffing was not in place by the deadline. Furthermore, the department's submitted plan and the testimony of the court-appointed expert supports the conclusion that the department had not complied with the requirement to design and implement a comprehensive plan with regard to homeless class members.

Additionally, the evidence supports the trial court's finding that the department was able to comply with the order. The department contends that the trial court should have assessed only the appropriations received from the General Assembly. We are not persuaded.

The department relies upon *State v. Pena,* 911 P.2d 48 (Colo.1996), for the proposition that the trial court should not punish the department for not complying with the trial court's order because the General Assembly did not appropriate money for these purposes. In *State v. Pena,* the supreme court held that the executive director of the Department of Corrections could not be held in contempt for failing to accept custody of prisoners pursuant to a court order if there was no space for those prisoners.

However, we do not read *State v. Pena* as narrowly as suggested by the department. Instead, we read that opinion as a reiteration of the well-established requirement that the trial court must make a finding, based on competent evidence, that the contemnor has the ability to comply with the court order. *See In re Boyer, supra; see also In re Marriage of Zebedee,* 778 P.2d 694 (Colo.App. 1988); *In re Marriage of Harris,* 670 P.2d 446 (Colo.App.1983).

Here, the trial court concluded that the department had the past and present ability

to comply with the order. Based on the testimony of several department executives, the trial court concluded that the department did not make a good faith effort to either secure all available necessary funding, attempt to raise additional funding as required by the settlement agreement, or reallocate existing resources to comply with this settlement agreement. The trial court concluded that the department could have complied with this order if it had made these good faith efforts. Accordingly, the trial court's findings that the department had the ability to comply with the order were supported by competent evidence.

Finally, the evidence supports the conclusion that defendants' actions were willful. Based on the executives' testimony, the trial court reasonably found that the department intentionally failed to take the required actions under the order.

Accordingly, we conclude that the trial court did not abuse its discretion in holding the department in contempt.

The appeal as to the October 20, 1999 and March 31, 2001 specific performance orders is dismissed. The March 31, 2001 contempt order is affirmed.

Judge MARQUEZ and Judge CARPARELLI concur.