In re the MARRIAGE OF Clark R. CYR, Appellant,

and

Keisa KAY, Appellee.

No. 06CA1444.

Colorado Court of Appeals, Div. A.

Jan. 24, 2008.

Frascona, Joiner, Goodman and Greenstein, P.C., Gregg A. Greenstein, Boulder, Colorado, for Appellant.

LaBuda & Associates, P.C., Judy L. LaBuda, Leah Ann Akin–Acosta, Boulder, Colorado, for Appellee.

Opinion by Judge FURMAN.

Clark R. Cyr (husband) appeals from the district court order finding him in contempt for violating the parties' separation agreement. We affirm.

In this remedial contempt case, we are asked to decide whether a trial court must find willful noncompliance before imposing remedial sanctions. We conclude a trial court need not make such a finding.

## I. Background

Husband and Keisa Kay (wife) reached a partial separation agreement (Agreement) that provided husband "shall be solely re-

sponsible for all 1997, 1998, or 1999 income tax not yet paid, and penalties and interest now known, or that may be assessed in the future as a result of an audit or review by taxing authorities." In return, wife gave up her right to receive payment or reimbursement related to tangible assets in a business that was marital property, including money loaned to the business by wife, and the value of some personal property.

Wife learned the Internal Revenue Service (IRS) was assessing her taxes and penalties for the 1998 tax year and, subsequently, sought innocent spouse relief from the IRS to avoid payment, in accordance with the terms of the Agreement. The IRS granted her request. Husband, however, successfully appealed the IRS's decision. As a result, wife was required to pay $16,245 to the IRS, one-half of the 1998 tax assessment.

Wife then filed a motion with the district court requesting issuance of a contempt citation against husband. In support of this motion, wife claimed husband's appeal from the IRS's decision granting innocent spouse relief and his failure to reimburse wife for the $16,245 tax assessment constituted a violation of the Agreement.

The court found husband in contempt, but did not impose punitive sanctions. The court determined that wife did not prove husband's failure to reimburse wife was willful, based on evidence of husband's debilitating medical condition during the period of noncompliance. Nonetheless, the court concluded that a remedial sanction was appropriate because husband "presently has the ability to comply with the order." Before the court sanctioned him, husband purged the contempt by paying wife her portion of the tax assessment. The district court subsequently awarded wife attorney fees, and determined that she was entitled to tax refunds that accrued during the marriage.

On appeal, husband challenges the district court's finding of contempt, award of attorney fees, and tax refund determination.

## II. Mootness

We initially consider whether husband's act of purging the remedial contempt sanction renders this appeal moot. We conclude it does not because the district court's order finding husband in contempt also provided the basis for its award of attorney fees. *See In re Marriage of Nussbeck,* 949 P.2d 73, 75 (Colo.App.1997)(a remedial contempt sanction was not rendered moot by husband's subsequent payment of arrearages owed under an order approving a separation agreement because the order was the predicate for an award of attorney fees), *rev'd on other grounds,* 974 P.2d 493 (Colo.1999) (*Nussbeck II* ).

## III. Finding of Contempt

Husband contends the district court abused its discretion by finding him in contempt because he did not willfully violate a court order. We disagree.

### A. C.R.C.P. 107

C.R.C.P. 107 distinguishes between two types of contempt, direct and indirect, and defines the actions constituting contempt to include "disobedience . . . by any person to . . . any lawful . . . order of the court." C.R.C.P. 107(a)(1). Thus, to find a party in contempt the fact finder must find that the contemnor did not comply with a lawful order of the court. The duty to comply arises because the contemnor was aware of the order. *See, e.g., People v. Allen,* 868 P.2d 379, 383 n. 10 (Colo.1994)(elements of contempt were established because defendant was aware of a permanent restraining order); *In re Marriage of Bernardoni,* 731 P.2d 146, 148 (Colo.App.1986)(father was made aware of his duty to permit mother to have visits with her children when the order was entered in open court).

Rule 107 also distinguishes between two types of contempt sanctions, punitive and remedial. C.R.C.P. 107(a)(4) & (5). Punitive sanctions are criminal in nature and are designed to punish "by unconditional fine, fixed sentence of imprisonment, or both, for conduct that is found to be offensive to the authority and dignity of the court." C.R.C.P. 107(a)(4); *see People v. Razatos,* 699 P.2d 970, 974 (Colo.1985). Because the purpose is to punish, and the power to punish for contempt should be used sparingly, the contem-

nor's mental state of willful disobedience must be shown. *See Nussbeck II,* 974 P.2d at 499; *People in Interest of Murley,* 124 Colo. 581, 585, 239 P.2d 706, 709 (1951). An act is willful if it is done "voluntarily, knowingly, and with conscious regard for the consequences of [one's] conduct." *Nussbeck II,* 974 P.2d at 499.

■ Punitive sanctions for contempt must be supported by findings of fact establishing beyond a reasonable doubt (1) the existence of a lawful order of the court; (2) the contemnor's knowledge of the order; (3) the contemnor's ability to comply with the order; and (4) the contemnor's willful refusal to comply with the order. *Id.* at 497; *see* C.R.C.P. 107(d)(1).

■ In contrast, remedial sanctions are civil in nature and are intended "to force compliance with a lawful order or to compel performance of an act within the person's power or present ability to perform." C.R.C.P. 107(a)(5). Because the purpose is remedial, and for the benefit of another, it does not matter what the contemnor intended when he or she refused to comply. *See McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949); *In re Estate of Elliott,* 993 P.2d 474, 479 (Colo.2000).

■ Remedial sanctions for contempt must be supported by findings of fact establishing the contemnor (1) did not comply with a lawful order of the court; (2) knew of the order; and (3) has the present ability to comply with the order. *Nussbeck II,* 974 P.2d at 498; *People v. Lockhart,* 699 P.2d 1332, 1336 (Colo.1985); *In re Marriage of Zebedee,* 778 P.2d 694, 697 (Colo.App.1988). When the court imposes a remedial contempt sanction, it must do so "in writing or on the record describing the means by which the person may purge the contempt." C.R.C.P. 107(d)(2). The burden of proving inability to comply with the order rests on the alleged contemnor. *In re Marriage of Lamutt,* 881 P.2d 445, 447 (Colo.App.1994).

■ Hence, in view of the differing purposes of remedial and punitive sanctions indicated in C.R.C.P. 107, we conclude proof of willfulness is not required before a court may impose remedial contempt sanctions.

In support of a contrary conclusion, husband relies on decisions from this court that have required trial courts to find a contemnor's noncompliance was willful before imposing either punitive or remedial sanctions. Based on the history of C.R.C.P. 107, and the context of those cases, we disagree.

### B. The History of C.R.C.P. 107 and Case Law

Earlier versions of C.R.C.P. 107 did not clearly distinguish between remedial contempt sanctions and punitive contempt sanctions. For example, the version of C.R.C.P. 107(d) in effect until 1995 provided:

> The court shall hear the evidence for and against the person charged and it may find him guilty of contempt and by order prescribe the punishment therefor. A fine may be imposed not exceeding the damages suffered by the contempt, plus costs of the contempt proceeding, plus reasonable attorney's fees in connection with the contempt proceeding, payable to the person damaged thereby. If the contempt consists of the failure to perform an act in the power of the person to perform he may be imprisoned until its performance. In addition thereto, to vindicate the dignity of the court, if the citation so states, a fine or imprisonment may be imposed. If any such fine is not paid the court may order the contemnor imprisoned until payment thereof.

Colorado case law interpreting earlier versions of C.R.C.P. 107 clearly held that a finding of willful noncompliance is necessary in punitive contempt cases. *Harthun v. Dist. Court,* 178 Colo. 118, 122, 495 P.2d 539, 541 (1972); *Harvey v. Harvey,* 153 Colo. 15, 17–18, 384 P.2d 265, 266 (1963); *Dist. Attorney v. Dist. Court,* 150 Colo. 136, 140, 371 P.2d 271, 273 (1962). The case law is unclear, however, whether a finding of willful noncompliance was necessary in remedial contempt cases under the former C.R.C.P. 107.

Some cases mentioned and upheld a trial court's finding of willfulness without stating that such a finding was required. *See, e.g., Bd. of Water Works v. Pueblo Water Works*

*Employees Local 1045,* 196 Colo. 308, 315, 586 P.2d 18, 23 (1978)(referring to trial court's finding of willfulness and finding that the dignity of the court had been impugned, but referring to proceeding as one for "civil contempt"); *Lewis v. Lorenz,* 144 Colo. 23, 27, 354 P.2d 1008, 1011 (1960) (upholding trial court's finding of willful violation in civil contempt proceeding); *In re Marriage of Schneider,* 831 P.2d 919, 922 (Colo.App.1992) (upholding trial court finding of willful disobedience in remedial contempt order).

Other cases discussed civil contempt and remedial sanctions without mentioning whether the violation was willful. *See, e.g., Lamutt,* 881 P.2d at 447–48 (civil contempt involves remedial sanctions); *Lockhart,* 699 P.2d at 1336 (civil contempt where party who has a present ability to obey has refused to perform); *In re Marriage of Crowley,* 663 P.2d 267, 268 (Colo.App.1983)(concluding the trial court must find the alleged contemnor had the present ability to perform the act required by the court).

Effective April 1, 1995, C.R.C.P. 107 was amended and the new rule separately addressed punitive and remedial sanctions. C.R.C.P. 107(a)(4) & (5), (d)(1) & (2). The supreme court, however, has not indicated that findings of fact establishing willful noncompliance are necessary before a court may impose remedial contempt sanctions under the new rule. For example, in *Nussbeck II,* the court considered the propriety of an order imposing a punitive contempt sanction. Although the validity of a remedial contempt sanction was not before it, the court stated:

> Unlike remedial contempt, which the contemnor may purge by complying with the court order in question, punitive contempt cannot be so purged. Rather, the punishment imposed [for punitive contempt] must be served by the contemnor because he or she has been convicted of a willful violation of a court order.

*Nussbeck II,* 974 P.2d at 498.

The following year, the court reviewed a remedial contempt sanction ordering the contemnor to jail until she returned funds she improperly took from an estate. *Elliott,* 993 P.2d at 478. The supreme court discussed the requirement that must be met before imposing a remedial sanction.

First, the court stated that "when remedial sanctions are imposed, the [trial] court must make findings of fact regarding the actions constituting the contempt and the present duty and ability to perform the acts required to purge oneself of the contempt." *Id.* at 479. Second, the court added:

> In a remedial contempt action, an individual's purported bad faith or self-induced inability to pay does not alter the factual determination that the individual does not maintain a present ability to pay. This is because absent a finding that the individual has the present ability to perform, the basis for the contempt order—the court's lawful attempt to compel an action—is without foundation.

*Id.* at 479 n. 2 (citation omitted). Because these statements omit any reference to willfulness, they suggest that such a finding is not required before a court may impose a remedial contempt sanction. *See also McComb,* 336 U.S. at 191, 69 S.Ct. 497 ("Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance. Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act." (citations omitted)); *Nat'l Labor Relations Bd. v. Local 282, Int'l Bhd. of Teamsters,* 428 F.2d 994, 1001 (2d Cir.1970)(violation need not be willful for party to be found in civil contempt); *Gen. Motors Corp. v. Gibson Chem. & Oil Corp.,* 627 F.Supp. 678, 681 (E.D.N.Y.1986); *Powell v. Ward,* 487 F.Supp. 917, 933 (S.D.N.Y.1980), *aff'd,* 643 F.2d 924 (2d Cir.1981); *D.D. v. M.T.,* 550 A.2d 37, 44 (D.C.1988) (intent is immaterial in a civil contempt proceeding); *Pugh v. Pugh,* 15 Ohio St.3d 136, 472 N.E.2d 1085, 1088–89 (1984)(proof of willful violation not a prerequisite to finding civil contempt); *Leisge v. Leisge,* 224 Va. 303, 296 S.E.2d 538, 541 (1982)(absence of willfulness does not relieve contemnor from civil contempt). *But see In re Marriage of Logston,* 103 Ill.2d 266, 82 Ill.Dec. 633, 469 N.E.2d 167, 175 (1984)(power to enforce an order to pay mon-

ey through contempt limited to cases of willful refusal to obey court's order).

We recognize that in 2003 a division of this court, reviewing a case involving remedial contempt sanctions, stated the trial court must find that (1) the party did not comply with the order; (2) the party's refusal to comply with the order was willful; and (3) the party had the ability to comply with the order. *Arevalo v. Colo. Dep't of Human Servs.*, 72 P.3d 436, 439 (Colo.App.2003) (citing *In re Boyer*, 988 P.2d 625 (Colo.1999)).

Similarly, cases following *Arevalo,* such as *In re Marriage of Lodeski,* 107 P.3d 1097, 1102 (Colo.App.2004) (citing *Arevalo); People v. Entrup,* 143 P.3d 1120, 1124 (Colo.App.2006)(citing *Lodeski* ); and *Hartsel Springs Ranch, Inc. v. Cross Slash Ranch, LLC,* 179 P.3d 237, 239 (Colo.App.2007)(citing *Boyer* ), conclude the trial court must find a party acted willfully before applying remedial contempt sanctions.

The division in *Arevalo,* however, adopted the requirements for a remedial contempt sanction from *Boyer,* which only dealt with punitive contempt in an attorney discipline proceeding. *Arevalo,* 72 P.3d at 439. Moreover, other cases have not required a finding of willfulness before a trial court may impose a remedial sanction. *See Bd. of County Comm'rs v. Gurtler,* 181 P.3d 315 (Colo.App. 2007)(trial court found a willful violation, but division applied standard of present ability to perform); *People v. McGlotten,* 134 P.3d 487, 491 (Colo.App.2005)(same).

Thus, in light of the distinctions between remedial and punitive sanctions, *see Nussbeck II* and *Elliott,* we conclude proof of willfulness is not required before a court may impose remedial contempt sanctions.

■ We note, however, that evidence of willfulness may show circumstantially the contemnor's present ability to comply with the underlying order. For example, the division in *Lodeski* stated:

> [T] he trial court made the required finding that husband had the ability to comply with the order by finding that he had sole control over the status of the benefits and that he intentionally altered wife's payee status by effectively negating the security

of the wage assignment and failing to make further payments as required under the permanent orders.

*Lodeski,* 107 P.3d at 1103.

### C.  Analysis

■ We will uphold a trial court's factual findings supporting its contempt sanction absent a clear abuse of discretion. *People v. Mulberry,* 919 P.2d 835, 837 (Colo.App.1995).

■ We conclude the record supports the trial court's finding that husband had a present ability to comply with the Agreement. It shows that (1) husband earns approximately $100,000 per year; (2) he owns property valued at approximately $436,000; and (3) these assets were available to pay wife the balance of the 1998 tax assessment. Accordingly, we conclude that, even if husband did not willfully violate a court order, the district court acted within its discretion by finding him in contempt. *See Nussbeck II,* 974 P.2d at 498; *Zebedee,* 778 P.2d at 698.

### D.  Dismissal of Wife's Motion for Contempt Citation

Husband also contends the trial court should have dismissed wife's motion for contempt citation because (1) the motion did not specifically allege he violated the Agreement; (2) an IRS audit did not determine he was obligated to pay the 1998 taxes; (3) the Agreement did not contain a specific date by which he was required to pay all taxes, penalties, and interest for 1998; and (4) the Agreement did not prohibit him from challenging the award of innocent spouse relief. We address and reject each of these contentions in turn.

#### 1.  Wife's Motion

■ We conclude wife's motion for contempt citation did not need to specifically allege that husband failed to comply with the Agreement. Her motion alleged that husband had not paid all 1997, 1998, and 1999 income taxes, which the agreement required. *See Lamutt,* 881 P.2d at 447 (citing *Stotts v. Stotts,* 83 Colo. 368, 369, 265 P. 911, 912 (1928)(the pleadings seeking a finding of contempt for non-payment of alimony are suffi-

cient if they allege only the ultimate fact that the alleged contemnor had the ability to make the ordered payments)).

### 2. IRS Audit

■ Husband also contends the Agreement required him to pay the parties' 1998 income tax, penalties, and interest only if the IRS conducted an audit or review, and because there was no such audit or review, he incurred no 1998 tax liability. We disagree.

■ A separation agreement must be enforced according to the expressed intent of the parties. *In re Marriage of Thomason*, 802 P.2d 1189, 1190 (Colo.App.1990); *In re Marriage of Norton*, 757 P.2d 1127, 1128 (Colo.App.1988).

■ As pertinent here, the Agreement provided:

[Husband] shall be solely responsible for all 1997, 1998, or 1999 income tax not yet paid, and penalties and interest now known, or that may be assessed in the future as a result of an audit or review by taxing authorities.

We conclude this provision is unambiguous and required husband to pay all of the parties' 1998 income taxes. An IRS audit or assessment was not required. Even if we adopted husband's interpretation of the Agreement, however, the IRS assessment in this case constituted agency review and, therefore, required husband to pay the tax.

### 3. Required to Pay

■ We also conclude that, although the Agreement did not contain a specific date by which husband was required to pay the taxes, the record reveals that (1) wife filed her motion for contempt citation nearly five years after the parties reached the Agreement; (2) the Agreement provided husband was to indemnify wife; and (3) giving him an indefinite time to comply would render the terms of the Agreement practically unenforceable. *See Adams v. City of Westminster*, 140 P.3d 8, 11 (Colo.App.2005); *see also Shull v. Sexton*, 154 Colo. 311, 317, 390 P.2d 313, 318 (1964)(if a contract does not specify a time for performance, the law implies a reasonable time). Thus, the trial court was

obligated to enforce the Agreement. *See* § 14–10–112(2), C.R.S.2007 ("In a proceeding for dissolution of marriage or for legal separation, the terms of the separation agreement, except terms providing for the allocation of parental responsibilities, support, and parenting time of children, are binding upon the court unless it finds ... the separation agreement is unconscionable.").

### 4. Challenging Innocent Spouse Relief

Husband also contends that nothing in the Agreement prohibited him from challenging an award of innocent spouse relief. The trial court, however, did not find husband in contempt because he challenged the award of innocent spouse relief, but because he did not comply with the Agreement by paying the 1998 taxes.

## IV. Award of Attorney Fees

■ Husband also contends the trial court abused its discretion in awarding wife attorney fees because her attorney failed to confer with opposing counsel before she filed the motion for contempt. He contends the version of C.R.C.P. 121 section 1–15(8) in effect when wife filed her motion in 2005 required her to confer with opposing counsel "when appropriate to do so." We disagree.

■ C.R.C.P. 107(d)(2) provides, "Costs and reasonable attorney's fees in connection with the contempt proceedings may be assessed in the discretion of the court." A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair. *People v. Strean*, 74 P.3d 387, 391 (Colo.App.2002). However, C.R.C.P 107(c) provides:

When it appears to the court by motion supported by affidavit that indirect contempt has been committed, the court may ex parte order a citation to issue to the person so charged to appear and show cause at a date, time and place designated why the person should not be punished.

Indirect contempt is "[c]ontempt that occurs out of the direct sight or hearing of the court." C.R.C.P. 107(a)(3). Thus, C.R.C.P.

**96**

107 expressly permits a party to file an ex parte motion alleging indirect contempt.

Accordingly, we conclude that C.R.C.P 107(c) does not mandate a conference with opposing counsel before filing a motion for an indirect contempt citation, although doing so could be useful, or even advisable. Thus, the trial court did not abuse its discretion in awarding attorney fees under C.R.C.P. 107(d)(2).

V.  Tax Refund

Husband also contends the trial court erred when it allowed wife to retain her portion of the 1997 income tax refund. We disagree.

Marital property includes "all property acquired by either spouse subsequent to the marriage except ... [p]roperty acquired by a spouse after a decree of legal separation." § 14–10–113(2)(c), C.R.S.2007. Wife received her portion of the 1997 income tax refund after the parties signed the Agreement and nothing in the Agreement required her to waive future income tax refunds. We therefore conclude the trial court properly determined she was not required to give husband her portion of the tax refund.

Because we conclude husband's appeal is not frivolous, we deny wife's request under C.A.R. 39.5 and 38(d) for attorney fees, damages, and costs.

The order is affirmed.

Chief Judge DAVIDSON and Judge METZGER * concur.

___

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2007.