23CA1073 Peo v Peters 12-19-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1073
Mesa County District Court No. 22CV10
Honorable Paul R. Dunkelman, Judge

---

People of the State of Colorado,

Plaintiff-Appellee,

v.

Belinda Knisley,

Defendant,

and Concerning Tina Peters,

Appellant.

---

JUDGMENT VACATED

Division III
Opinion by JUDGE DUNN
Gomez and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 19, 2024

---

Daniel P. Rubinstein, District Attorney, Richard Tuttle, Deputy District Attorney, Grand Junction, Colorado, for Plaintiff-Appellee

John Case, P.C., John Case, Littleton, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    Tina Peters appeals the district court's finding of punitive contempt. Because insufficient evidence and findings supported the contempt judgment, we vacate the contempt judgment as well as the punitive sanction.

## I.    Background and Procedural History

¶ 2    This contempt proceeding arises out of a criminal case filed against Belinda Knisley, one of Peters' former employees in Grand Junction, Colorado. In February 2022, Peters attended a hearing in Knisley's case. At that hearing, the prosecution reported concerns to the court that Peters was recording the proceeding on her iPad. The Knisley court stopped the hearing and asked Peters whether she was recording the proceeding. Peters denied recording it. The court then explained that "there's a sign on the door that says no recording, video, audio, it's all common sense for most folks to know that." The court added that "this is the one warning" and if it "find[s] that someone has violated this order in the future, then [it would] take appropriate action."

¶ 3    Later, the Knisley court revisited the allegation and made the following additional comments:

[I]t had come to the [c]ourt's attention that someone may have been recording in the courtroom. I do not find one way or another as to whether that person was recording, or broadcasting, or audio recording[,] video recording[,] whatever it may have been. That individual told me that they were not doing any of those three things.

So, I relied on that representation in not entering any type of action at that time. If I had known[,] if it had been confirmed[,] I would have done something differently, and that's in-part, because there is a decorum order that I entered [in Ms. Knisley's case]. There's also a sign on the outside of the door that specifically says that no one is authorized — I shouldn't say the sign on the outside of the door. My decorum order says this — no one is authorized to record any portion of the [c]ourt's proceedings via audio or — or video, and that, of course, would encompass broadcasting of the same. So, I make that additional record.

¶ 4        A few weeks later, the prosecution moved for a contempt citation against Peters, requiring her to "show cause why she should not be held in contempt for being untruthful to the [Knisley] court." Attached to the motion were affidavits from two individuals who claimed that Peters had been recording the proceedings. Though acknowledging "there is a lot to unravel with respect to whether Peters could be charged with knowledge [of] a decorum

order, issued in [Knisley's case] that was not served on [Peters]," the district court issued the contempt citation.

¶ 5 At Peters' contempt hearing, the prosecution presented three witnesses who testified about Peters' conduct and statements at the Knisley hearing. After the hearing, the district court entered an oral ruling finding that Peters had recorded the proceeding and was dishonest to the Knisley court. And it found that her dishonesty "obstructed the administration of justice" and offended the dignity of the court. The district court, therefore, found Peters in contempt and imposed a fine as a punitive sanction.

## II. Analysis

¶ 6 Peters argues that the contempt judgment can't stand because insufficient evidence and findings supported it. We agree.

¶ 7 A party seeking punitive sanctions for contempt must prove — and a court must find — beyond a reasonable doubt that (1) a lawful order existed; (2) the alleged contemnor had knowledge of that order; (3) the alleged contemnor had the ability to comply with that order; and (4) the alleged contemnor willfully refused to comply with that order. *People ex rel. State Eng'r v. Sease*, 2018 CO 91, ¶ 23. Thus, as relevant here, to find a party in contempt and to

impose punitive sanctions, a court must find that the alleged contemnor knew about a court order and willfully violated it. *In re Marriage of Cyr*, 186 P.3d 88, 91-92 (Colo. App. 2008).

¶ 8    We review de novo whether sufficient evidence supports a contempt judgment. *People in Interest of K.P.*, 2022 COA 60, ¶¶ 22, 37. But we review a district court's contempt finding for an abuse of discretion. *Sease*, ¶ 24. A court abuses its discretion when it misconstrues or misapplies the law or its decision is manifestly arbitrary, unreasonable, or unfair. *In re Marriage of Evans*, 2021 COA 141, ¶ 25.

¶ 9    Peters is correct that the contempt judgment lacks several required findings, without which it cannot stand. First, the judgment doesn't plainly identify — by date or otherwise — the court order that Peters purportedly violated. And "[t]here can be no contempt without proof of the existence of an underlying court order which is violated." *In re Marriage of Zebedee*, 778 P.2d 694, 697 (Colo. App. 1988); *see also In re Marriage of Nussbeck*, 974 P.2d 493, 499 (Colo. 1999) (The purpose of punitive contempt is "to punish the offending party for refusal to obey lawful orders.").

4

¶ 10    Even so, the prosecution says that the district court "found that [the Knisley court] noted that there was a sign on the courtroom door 'that says no recording, no video, audio.'" There are three problems with this argument. First, the district court didn't make such a finding, and the prosecution's purported support for the statement is not from the court's findings; rather, it's simply a colloquy between defense counsel and the court. Second, the court couldn't reasonably make such a finding. That's because the prosecution never introduced the sign at the contempt hearing, and it's unknown what the sign said or whether it was a court order. And insofar as the prosecution points to the Knisley court's general reference to a decorum order entered in the Knisley case, the district court specifically declined to judicially notice the Knisley court's statements "for the truth of the matter asserted," though it judicially noticed the transcript of the Knisley hearing for other purposes. Thus, the record is devoid of any evidence about the existence, scope, or content of the court order that Peters allegedly violated. *See Hartsel Springs Ranch of Colo., Inc. v. Cross Slash Ranch, LLC*, 179 P.3d 237, 239 (Colo. App. 2007) ("Generally, there can be no contempt unless an order or decree requires a party to

do, or refrain from doing, some specific act."); *see also People v. Lockhart,* 699 P.2d 1332, 1336 (Colo. 1985) ("A party may be held in contempt only for refusal to do exactly what the court order requires.").

¶ 11     Second, even if we assume the prosecution presented some evidence that the Kinsley court entered a decorum order that prohibited recording the proceedings, the district court didn't find that Peters had actual knowledge of the order.  And, again, it couldn't make that finding because the prosecution presented no evidence that Peters — a nonparty to the Knisley case — had actual notice or knowledge of such an order.[1]  The court seemingly acknowledged the absence of proof that Peters had actual knowledge of an order, stating that Peters' actions at the Knisley hearing indicated that she "was aware" that recording the proceeding "was not acceptable, if not a violation of a [c]ourt order." But some general awareness that certain conduct isn't "acceptable" isn't enough to support a punitive contempt finding.  *See People in*

---

[1] In fact, Knisley testified at Peters' contempt hearing that she was unaware of any prohibition against recording the proceedings in her criminal case.

6

*Interest of F.S.B.*, 640 P.2d 268, 269 (Colo. App. 1981) ("[A] contempt proceeding is fatally defective unless it is shown that the contemnor had actual notice or knowledge of the existence of the order at the time [she] is claimed to have violated it.").

¶ 12    Finally, the district court didn't find that Peters willfully violated the purported decorum order. Because the purpose of punitive contempt is to punish, "the contemnor's mental state of willful disobedience must be shown." *Cyr*, 186 P.3d at 91-92 (A willful act is done "voluntarily, knowingly, and with conscious regard for the consequences of [one's] conduct." (quoting *Nussbeck*, 974 P.2d at 499)).

¶ 13    For these reasons, we vacate the contempt judgment as well as the punitive sanction. Having so concluded, we needn't consider Peters' remaining contentions.

### III.   Disposition

¶ 14    The contempt judgment is vacated.

JUDGE GOMEZ and JUDGE TAUBMAN concur.