23CA1600 Jeffrey Sandri Rev Trust v Flores 02-13-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1600
Summit County District Court No. 19CV30037
Honorable Karen A. Romeo, Judge

Jeffrey W. Sandri Revocable Trust,

Plaintiff-Appellant,

v.

Kathryn N. Flores,

Defendant-Appellee.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE SULLIVAN
Freyre and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 13, 2025

Ciancio Ciancio Brown, P.C., Marc J. Kaplan, Denver, Colorado, for Plaintiff-Appellant

Gray Bugos & Schroeder LLC, J. Lee Gray, Joshua F. Bugos, Littleton, Colorado, for Defendant-Appellee

¶ 1     Plaintiff, the Jeffrey W. Sandri Revocable Trust (the Trust), appeals the district court's order imposing remedial contempt sanctions, as requested by defendant, Kathryn N. Flores, for blocking portions of a twenty-foot-wide private access easement (PAE) that crosses the Trust's property. We affirm the contempt judgment and remand the case for the district court to determine whether to award Flores her appellate attorney fees and costs and, if so, in what amounts.

## I.     Background

¶ 2     The facts and procedural history of the underlying real property dispute are laid out in full in *Frisco Lot 3 LLC v. Giberson Ltd. Partnership, LLLP*, 2024 COA 125. As relevant to this appeal, the Trust originally filed this action against multiple defendants, requesting a decree quieting title to a lot it owns — Lot 9 — in the Giberson Preserve subdivision located in Summit Country. The Trust also sought a clarification of the PAE's scope. *See id.* at ¶ 68. This appeal primarily involves only one defendant, Flores, the owner of neighboring Lot 10, and the contempt proceeding she brought against the Trust for violating the court's order to keep the PAE clear of any obstacles.

1

¶ 3     In the court's final trial order, dated August 2022, it included a diagram that inadvertently depicted the PAE with a green line as crossing Tract C above Lots 9 and 10 (shown in Figure 1 below).[1]



*Figure 1*

¶ 4     Two pages later, however, the court included a diagram of the original 1989 plat that depicted the PAE traversing down the borders of Lots 8 and 9 and crossing the bottom of Lot 9 to reach Lot 10 (shown in Figure 2 below in yellow, which we have added for

[1] We have taken Figures 1 and 2 from *Frisco Lot 3 LLC v. Giberson Ltd. Partnership, LLLP*, 2024 COA 125, ¶¶ 70, 81, although they also appear in the record.

2

clarity).



*Figure 2*

¶ 5    The Giberson Preserve Homeowners Association and its board members (GHOA defendants) filed a C.R.C.P. 60(a) motion to correct the court's error and to resolve the discrepancy between the PAE's location in the court's diagram and the 1989 plat.  On November 10, 2022, the court granted the motion, determining that it had indeed made an error in its diagram (the corrective order).  The court corrected its mistake by confirming that the PAE traverses downward between the borders of Lots 8 and 9, before running horizontally near the bottom of Lot 9 where it ends at Lot 10.  The court emphasized that plaintiffs, including the Trust, must "abstain from placing any obstacle that blocks the PAE."

¶ 6    On appeal, the division in *Frisco Lot 3* rejected the Trust's argument that the court erred by using C.R.C.P. 60(a) to correct the improperly labeled diagram.  *See Frisco Lot 3,* ¶¶ 65-77.  However, the division also determined that "[t]here is an obvious conflict between the trial court's [corrective] order, which reiterates where the PAE lies, and the underlying [August 2022] trial order's delineation of property rights."  *Id.* at ¶ 84.  The division therefore (1) affirmed the corrective order; (2) reversed "[t]hat portion of the [August 2022] trial order concerning [the Trust's] claim" regarding the PAE's scope; and (3) remanded for the court to make findings of fact and conclusions of law resolving the conflict.  *Id.* at ¶ 124; *see also id.* at ¶¶ 85, 125.

¶ 7    Two years before the division in *Frisco Lot 3* issued its opinion, however, Flores requested that the district court find the Trust in contempt, asserting that the Trust was obstructing the PAE in violation of the court's corrective order.  The court issued a contempt citation, giving the Trust forty-eight hours to remedy the violation.

¶ 8    Five months later, the court held a contempt hearing to determine whether the Trust remained in contempt and, if so,

4

whether remedial sanctions were appropriate. In a detailed written order issued in May 2023, the court found that the Trust remained in contempt by failing to remove cones, construction materials, and debris within the PAE. As a remedial sanction, the court ordered the Trust to remove all such materials from the PAE within twenty-one days and awarded Flores her attorney fees and costs incurred in bringing the contempt motion.

## II. Discussion

¶ 9 The Trust contends that the court erred by (1) making substantive amendments to the PAE's location in response to the GHOA defendants' C.R.C.P. 60(a) motion and (2) finding it in contempt of the court's corrective order and imposing remedial contempt sanctions.

### A. Amendment to the PAE's Location

¶ 10 At the outset, we decline to consider the Trust's untimely contention that the court erred by making substantive, rather than clerical, amendments to the PAE's location under C.R.C.P. 60(a). A party must file a notice of appeal within forty-nine days after entry of the judgment or order being appealed. C.A.R. 4(a)(1). Failure to file a notice of appeal within the prescribed time deprives this court

5

of jurisdiction and precludes our review of the merits. *Widener v. Dist. Ct.*, 615 P.2d 33, 34 (Colo. 1980).

¶ 11 In this case, the court issued its corrective order under C.R.C.P. 60(a) on November 10, 2022. But the Trust didn't file its notice of appeal in *this* appeal until September 13, 2023, more than ten months later.[2] Therefore, we lack jurisdiction to review this contention. *See* 18 Anne Whalen Gill, *Colorado Practice Series: Appellate Law and Practice* § 6:13, Westlaw (3d ed. database updated July 2024) ("An order deciding a C.R.C.P. 60(a) or (b) motion is appealable independently from the underlying judgment."); *cf. United Bank of Boulder, N.A. v. Buchanan*, 836 P.2d 473, 475 (Colo. App. 1992) ("[A]n order denying a C.R.C.P. 60(b) motion is appealable independently of an underlying judgment."); *see also* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2871, Westlaw (3d ed. database updated June

---

[2] The Trust advanced similar arguments under C.R.C.P. 60(a) against the corrective order in its separate appeal in *Frisco Lot 3* — arguments that the division considered and rejected. *See Frisco Lot 3*, ¶¶ 65-77. To the extent the Trust now attempts to bring different appellate arguments challenging the corrective order, such arguments (1) are untimely and (2) should have been asserted in *Frisco Lot 3.*

2024) ("If the court corrects the judgment — or refuses to correct it — after an appeal has ended or after the time for appeal has run in a case in which no appeal was taken, its action would itself be appealable though the appeal would be limited to its disposition of the Rule 60(a) motion and would not bring up for review the underlying judgment.").

¶ 12     We aren't persuaded otherwise by the Trust's argument that it preserved this contention in its C.R.C.P. 59 motion to amend or vacate the court's contempt order, filed on May 24, 2023. By that point, C.A.R. 4(a)(1)'s forty-nine-day deadline for appealing the court's corrective order had already passed.

¶ 13     Accordingly, we lack jurisdiction to consider the Trust's challenge to the court's corrective order.

### B.     Contempt Order

¶ 14     Next, the Trust contends that the court erred by finding it in contempt because (1) the evidence presented at the contempt hearing was insufficient to support a finding that it remained in violation of the court's corrective order; (2) the court's corrective order created confusion over whether the PAE crossed Tract C or Lot 9, rendering it "impossible" to comply; and (3) the court

conducted an improper site visit of the property after the contempt hearing. We disagree with these contentions.

### 1. Standard of Review and Applicable Law

¶ 15    While we ordinarily review a court's finding of contempt for an abuse of discretion, *In re Marriage of Sheehan*, 2022 COA 29, ¶ 23, we review the record de novo to determine whether the evidence was sufficient to sustain the court's contempt judgment, *People in Interest of K.P.*, 2022 COA 60, ¶ 22.

¶ 16    Unlike punitive sanctions that are criminal in nature and designed to punish, remedial sanctions are civil in nature and are intended to "force compliance with a lawful order or to compel performance of an act within the person's power or present ability to perform." C.R.C.P. 107(a)(5); *see In re Marriage of Cyr*, 186 P.3d 88, 92-93 (Colo. App. 2008). "In a contempt proceeding where remedial sanctions may be imposed, the court shall hear and consider the evidence for and against the person charged and it may find the person in contempt and order sanctions." C.R.C.P. 107(d)(2). "Remedial sanctions for contempt must be supported by findings of fact establishing the contemnor (1) did not comply with a lawful order of the court; (2) knew of the order; and (3) has the

8

present ability to comply with the order." *Cyr*, 186 P.3d at 92. The movant bears the initial burden of demonstrating these elements by a preponderance of the evidence, the "lowest degree of proof." *In re A.C.B.*, 2022 COA 3, ¶ 51; *see also In re Marriage of Lamutt*, 881 P.2d 445, 447 (Colo. App. 1994) (burden initially rests on the movant to make a prima facie showing that an underlying order exists that the alleged contemnor has violated). If the movant makes this prima facie showing, the burden then falls to the alleged contemnor to prove that they are unable to comply with the court's order. *See Cyr*, 186 P.3d at 92.

¶ 17 When imposing remedial sanctions, the court must specify the means by which the contemnor may purge the contempt and find that the contemnor has the present duty and ability to perform the acts required to purge themselves of contempt. *See In re Estate of Elliott*, 993 P.2d 474, 479 (Colo. 2000) (citing C.R.C.P. 107(d)(2)). This "purge clause" is designed "to coerce [the contemnor's] compliance with the court's orders." *In re Marriage of Zebedee*, 778 P.2d 694, 698 (Colo. App. 1988). By contrast, an affirmative act carried out in the past that isn't ongoing can't be purged because

"the contemnor cannot undo what was done." *Aspen Springs Metro. Dist. v. Keno*, 2015 COA 97, ¶ 32.

### 2. Additional Background

¶ 18    At the April 2023 contempt hearing, Flores's husband, Chad Asarch, testified that although he hadn't been to the PAE since the summer of 2022, he asked a neighbor, Clint Giberson, to take pictures and measure the accessible width of the PAE.

¶ 19    Giberson testified that he was familiar with the Giberson Preserve's planned unit development because his parents had previously owned Lot 9 and his family still owns property surrounding the subdivision. According to Giberson, although Jeffrey Sandri (the Trust's sole trustee) removed some materials from the PAE in early January 2023 using a Bobcat machine, he didn't clear the full width of the twenty-foot-wide PAE. Giberson also observed a surveyor hired by Sandri staking the PAE in early January 2023, although he admitted he didn't know if the stakes accurately marked the PAE's boundaries. Giberson also testified that he observed Sandri removing materials from the PAE for about five hours the day before the April 2023 contempt hearing. Giberson returned to the PAE the next morning at 11:30 a.m. — the

day of the contempt hearing — and saw that portions of the twenty-foot-wide PAE remained obstructed with building materials and lumber, including areas within the survey stakes.

¶ 20    Sandri testified on behalf of the Trust at the contempt hearing. As relevant here, he explained that, before the court issued its corrective order in November 2022, he hired a contractor to erect a barricade across the PAE where Lots 8 and 9 come together, but he removed the barricade after the court issued its corrective order. He likewise detailed multiple efforts he had made to clear the PAE after receiving the court's December 2022 contempt citation — efforts that he believed were sufficient to purge any contempt.

¶ 21    At the conclusion of the hearing, the court asked if any party objected to the court conducting a site visit. Both sides indicated that they had no objection, and Sandri offered the court detailed parking instructions.

### 3.    Analysis

¶ 22    We conclude that sufficient evidence supported the court's finding that the Trust remained in contempt of the corrective order, thus justifying the court's remedial sanctions.

¶ 23    As to the Trust's knowledge of the order, Sandri's own testimony that he attempted to clear the PAE of obstacles in December 2022 shows that he knew of the Trust's obligation to keep the PAE unobstructed.  Similarly, by removing the barricade over Lot 9 after the court issued its corrective order, Sandri demonstrated that he understood that the PAE crossed Lots 8 and 9, not Tract C.  Despite Sandri's efforts to clear the PAE, Giberson testified that materials continued to partially block the PAE between January 2023 and the morning of the April 2023 contempt hearing, establishing an ongoing violation of the corrective order.  And Giberson's testimony that he observed Sandri removing materials from the PAE for approximately five hours the day before the contempt hearing, and that he had previously seen Sandri use a Bobcat machine on the property to clear materials, supported the court's finding that the Trust had the present ability to comply with the order.  *See Cyr*, 186 P.3d at 92.

¶ 24    We recognize that the Trust's surveyor disputed Giberson's testimony regarding the precise location of the PAE's boundaries. But the Trust's surveyor acknowledged that, as of early January 2023, someone had placed cones within the PAE's boundaries as

12

drawn by the surveyor. This testimony aligned with Giberson's testimony that Sandri hadn't fully cleared the PAE. To the extent Sandri testified that he thought he had fully cleared the PAE, the task of resolving conflicting testimony and making credibility determinations fell to the district court as the fact finder. *See, e.g., In re Marriage of Lewis*, 66 P.3d 204, 207 (Colo. App. 2003) ("[C]redibility determinations and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom, are matters within the sole discretion of the trial court.").

¶ 25    For similar reasons, we aren't convinced that the court's corrective order created confusion over whether the PAE traversed Lot 9 rather than Tract C, rendering it "impossible" for the Trust to comply. As discussed, Sandri's own curative actions to partially clear the PAE after the court issued the corrective order bely the Trust's position that Sandri was confused over whether the PAE crossed Lot 9. Moreover, the corrective order is clear on its face that the PAE "traverses through Lot[] 9" and that it remains "where it is depicted in the Plat, PUD, and Declaration." *See also Frisco Lot 3*, ¶ 75 ("[T]he trial court was clear in its [corrective order] that it

13

had not intended to move the PAE and that the PAE was not moved from its approximate historical location . . . .").

¶ 26　　We of course acknowledge that the Trust obtained a partial reversal in *Frisco Lot 3*, in large part because of a conflict between the court's corrective order and its August 2022 trial order. *See id.* at ¶¶ 78-85. But absent a stay, the Trust's partial success on appeal doesn't grant it carte blanche to violate the court's corrective order with impunity, nor does it wipe away the court's prior finding that the Trust was in contempt for violating the corrective order. This is so because (1) the division in *Frisco Lot 3* never reversed the corrective order; and (2) even if it had, the Trust was still obligated to comply with the corrective order while the *Frisco Lot 3* appeal was pending. *See People v. Coyle*, 654 P.2d 815, 820 (Colo. 1982) ("If a person to whom a judge directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal." (quoting *Maness v. Meyers*, 419 U.S. 449, 458 (1975)); *see also People v. Jones*, 262 P.3d 982, 987 (Colo. App. 2011) (stating a party is "not free to disregard a ruling she th[inks] to be incorrect: her remedy [is] to appeal after judgment").

¶ 27    For two reasons, we also aren't persuaded by the Trust's argument that the court erred by conducting a site visit.  First, the Trust's counsel expressly consented to the court visiting the site, and Sandri even provided the court with parking instructions.  *See Thomas v. Nat'l State Bank*, 628 P.2d 188, 190 (Colo. App. 1981) (rejecting the defendants' challenge to the trial court's reliance on its own "view of the premises" where no party objected to a site visit).  Second, although we agree with the Trust that a court's site visit can't supply additional evidence but rather merely "enable[s] the court to properly understand and apply the evidence submitted," *Zambakian v. Leson*, 246 P. 268, 269 (Colo. 1926), the Trust fails to identify any specific findings by the court for which the site visit served as the sole evidentiary foundation.  Indeed, the court's order finding the Trust in contempt doesn't even mention the site visit.

¶ 28    Accordingly, we discern no error in the court's order finding that the Trust remained in contempt of the corrective order and imposing remedial sanctions.

15

## C. Appellate Attorney Fees and Costs

¶ 29    Citing C.R.C.P. 107(d)(2), Flores requests an award of her reasonable attorney fees and costs incurred on appeal.  We agree with Flores that her reasonable appellate attorney fees and costs were incurred "in connection with the contempt proceedings" and therefore "*may* be assessed in the discretion of the court."  C.R.C.P. 107(d)(2) (emphasis added); *see also Madison Cap. Co. v. Star Acquisition VIII*, 214 P.3d 557, 562 (Colo. App. 2009) (agreeing that appellee's appellate attorney fees and costs "may be awarded under C.R.C.P. 107(d)(2)," but remanding the "issue to the trial court for a determination of whether to award such fees and costs and, if so, in what amounts").  Consistent with *Madison Capital Co.*, we remand the case to the district court to determine whether to award Flores such fees and costs and, if so, in what amounts.

## III.    Disposition

¶ 30    We affirm the contempt judgment and remand the case to the district court for further proceedings consistent with this opinion.

JUDGE FREYRE and JUDGE SCHOCK concur.