COLORADO COURT OF APPEALS        **2017COA51**

Court of Appeals No. 15CA0878
El Paso County District Court No. 06DR65
Honorable Theresa M. Cisneros, Judge
Honorable Evelyn H. Sullivan, Magistrate

In re the Marriage of

Sylvia Dean, f/k/a Sylvia Cook,

Appellant,

and

Andre L. Cook,

Appellee.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE BOORAS
Terry, J., concurs
Berger, J., dissents

Announced April 20, 2017

Sylvia Dean, Pro Se

Beltz & West, P.C., Daniel A. West, Colorado Springs, Colorado, for Appellee

¶ 1     In this post-decree dissolution of marriage proceeding, Sylvia

Cook (mother), now known as Sylvia Dean, appeals the district

court's adoption of the magistrate's finding of contempt and award

of attorney fees in favor of Andre L. Cook (father).  We affirm in part,

reverse in part, and remand for further proceedings.

## I.  Background

¶ 2     Mother and father divorced in 2006.  At that time, the court

named mother the primary residential parent for the parties' two

children but allowed the parties to determine their own "liberal

parenting time" schedule.

¶ 3     Six years later, mother moved to stop father's parenting time,

asserting that he had not seen the children in more than two years

and had no interest in seeing them.  Father responded that mother

had denied him parenting time, and he requested a more formal

parenting time schedule.

¶ 4     Eventually the parties stipulated to, and the court adopted, a

parenting time arrangement.  As now relevant, the parties agreed

that father (1) would have parenting time every Wednesday from

after school until 7:00 p.m. and (2) "shall be entitled to have

Thanksgiving this year [2013] with the children from 10:00 a.m. on

1

Thursday until taking the children to school on the following Monday morning."

¶ 5     Father later filed a verified motion and affidavit for contempt, requesting remedial contempt sanctions for mother's noncompliance with the two above-mentioned portions of their stipulation.

The following reflects how the contempt motion proceeded:

- The advisement hearing occurred on March 3, 2014.

- The parties appeared for the contempt hearing on May 19, 2014, but agreed to set it over until September 22, 2014, so that they could participate in a settlement meeting. The parties also agreed that mother would contact a therapist, and the court ordered her to start therapy within thirty days.

- On September 22, the contempt hearing was set over to October 6, 2014.

- The magistrate began the contempt hearing on October 6 and finished it on November 3, 2014, when she found mother in remedial contempt and ordered her to pay father's attorney fees. The magistrate further ordered that

mother could purge the contempt by allowing father to have the children during their 2014 Thanksgiving break.

- Sentencing occurred on January 28, 2015, at which time the court ordered mother to pay father's $4926.25 in attorney fees.

¶ 6    Mother timely filed a C.R.M. 7 petition challenging the magistrate's orders.  The district court adopted the magistrate's orders on review.

## II.  Applicable Legal Principles

¶ 7    C.R.C.P. 107 provides the authority under which courts are to conduct contempt proceedings.  *See In re Marriage of Nussbeck*, 974 P.2d 493, 498 (Colo. 1999).  Remedial sanctions for contempt must be supported by findings of fact establishing that the contemnor (1) did not comply with a lawful order of the court; (2) knew of the order; and (3) had the present ability to comply with the order.  *In re Marriage of Cyr*, 186 P.3d 88, 92 (Colo. App. 2008).

¶ 8    Like the district court, we must accept the magistrate's factual determinations as to contempt unless there is no support in the record for those findings or the findings are clearly erroneous.  *See* C.R.M. 7(a); *In re Marriage of Webb*, 284 P.3d 107, 108-09 (Colo.

App. 2011); *see also In re Parental Responsibilities Concerning G.E.R.*, 264 P.3d 637, 638-39 (Colo. App. 2011) (reviewing court engages in a second layer of appellate review of the magistrate's order, and must accept the magistrate's findings unless they are clearly erroneous). "A court's factual findings are clearly erroneous only if there is no support for them in the record." *Van Gundy v. Van Gundy*, 2012 COA 194, ¶ 12.

### III. Sua Sponte Reconsideration of Sanctions

¶ 9 Mother first contends that the magistrate improperly reconsidered the May 19 order when, on November 3, she changed the nature of the sanctions imposed. We reject this contention because no sanctions were imposed until November 3, when the magistrate found mother guilty of remedial contempt. *See Wright v. Dist. Court*, 192 Colo. 553, 555, 561 P.2d 15, 17 (1977) (finding of contempt must precede imposition of sanctions).

¶ 10 We acknowledge that the magistrate entered an order on May 19 requiring mother to engage in therapy. However, the record reveals that the magistrate simply adopted the parties' stipulation concerning the same; the order was not imposed to force mother's

4

compliance with the parenting time stipulation. *See* C.R.C.P. 107(a)(5) (defining remedial sanctions).

## IV. Evidence and Findings

¶ 11   Mother's second, third, and fifth contentions challenge the evidence presented at the contempt and sentencing hearings, the weight placed on that evidence by the magistrate, and the findings and inferences the magistrate made in her orders. We do not disturb the orders.

¶ 12   A party seeking review of a magistrate's order has the burden to provide the reviewing court with a record justifying the rejection or modification of that order. *In re Marriage of Rivera*, 91 P.3d 464, 466 (Colo. App. 2004); *see also Yadon v. Southward*, 64 P.3d 909, 912 (Colo. App. 2002) (pro se litigants must adhere to the same rules of procedure applicable to attorneys).

¶ 13   If an appellant argues "that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion." C.A.R. 10(b). Where the appellant fails to provide such a transcript, the reviewing court

must presume that the record supports the judgment. *See* C.R.M. 7(a)(9); *In re Marriage of Beatty*, 2012 COA 71, ¶ 10.

¶ 14    Here, the transcripts from the contempt and sentencing hearings are in the appellate record. However, mother did not provide them to the district court when she sought review of the magistrate's orders under C.R.M. 7(a). Consequently, we confine our review of mother's arguments to the record considered by the district court, which did not include any transcripts. *See Rivera*, 91 P.3d at 466.

¶ 15    Without reviewing the transcripts, we are unable to evaluate the evidence to determine whether it sufficiently supports the magistrate's orders. *See* C.R.M. 7(a)(9); *G.E.R.*, 264 P.3d at 639. To the contrary, we must presume that the record supports the magistrate's orders that mother failed to comply with the parties' stipulation and was, therefore, in remedial contempt. *See* C.R.M. 7(a)(9); *Beatty*, ¶ 10; *see also People v. Wells*, 776 P.2d 386, 390 (Colo. 1989) (reviewing court cannot conclude that district court's judgment is erroneous when the record is insufficient).

¶ 16    Mother's related argument that she cannot be held in contempt because she did not "willfully" violate the order is

misplaced.  Willfulness is not a requirement for finding remedial contempt.  *See Cyr*, 186 P.3d at 91-92.

## V.  Order as to Compliance with Parenting Time

¶ 17    We agree with mother's fourth contention that the magistrate exceeded her authority when she ordered mother

> to remove all privileges for up to a month for the children if they do not comply with her instruction to go to [father]'s home.  This means no TV, no cable, no music, no friends, no cell phone, no I-pads, no computers, unless the parenting time is exercised with the [father].  Each violation of failure to attend parenting time will result in a one month restriction of these items for the children by [m]other.

We therefore strike these three sentences from paragraph 9 of the magistrate's order.

¶ 18    Contrary to father's assertion, mother properly preserved this claim in her petition for district court review.  Hence, we may consider the issue on appeal.  *See People in Interest of K.L-P.*, 148 P.3d 402, 403 (Colo. App. 2006).

¶ 19    To resolve disputes concerning parenting time, courts have broad authority to make or modify parenting time orders that are in the best interests of the children.  *See* §§ 14-10-129(1)(a),

7

-129.5(2)(h), C.R.S. 2016.  But there is a presumption that fit parents act in the best interests of their children.  *Troxel v. Granville*, 530 U.S. 57, 58 (2000); *In Interest of Baby A*, 2015 CO 72, ¶ 23.

¶ 20    However, the magistrate's order disregards that presumption by concluding that mother should be disciplining her children if they choose not to visit with father and specifying the disciplinary actions that mother must take.[1]  *See Troxel*, 530 U.S. at 73-74 (noting that a court cannot interfere with a fit parent's decisions simply because it believes a "better" decision could be made).  We do not suggest that mother may violate the parenting time order by allowing her children to refuse to visit with father.  We simply conclude that by specifying the methods that she must employ in

---

[1] Similarly, in *Violette v. Violette*, 120 A.3d 667 (Me. 2015), the Supreme Judicial Court of Maine disapproved of a trial court order requiring the parties to enforce visitation by requiring the refusing child to stay in his or her bedroom without access to the Internet, a telephone, text messaging, a television, or video games during such time.  Although the court did not reach the constitutional issue under *Troxel v. Granville*, 530 U.S. 57 (2000), the court concluded that requiring the parents to discipline their children in "such a very specific and inflexible fashion" with "no discretion left to the parents" was an abuse of discretion.  *Violette*, 120 A.3d at 676.

8

order to obtain the children's compliance, the order improperly ignores the fit parent presumption. Accordingly, we conclude that the magistrate exceeded her authority in entering paragraph 9 of her order, and we therefore strike it. Insofar as the district court adopted that portion of the magistrate's order, we reverse the district court's order.

¶ 21 The dissent contends that the district court was precluded from requiring mother to take even unspecified measures to require the children to submit to the parenting time order, and that it had no authority to impose contempt sanctions absent mother taking actions that would "thwart" enforcement of the parenting time order. However, a district court has inherent authority to enforce obedience to its orders through contempt sanctions. *People v. McGlotten*, 134 P.3d 487, 489-90 (Colo. App. 2005). Additionally, under section 14-10-129.5(2)(e), a court may hold a parent in contempt of court and impose a fine or jail sentence where the parent does not comply with a parenting time schedule.

¶ 22 Although it might be difficult to compel a child, particularly a teenager, to comply with a court-ordered parenting plan, this does not excuse a parent from making reasonable good faith efforts to

9

secure the child's compliance. *See In re Marriage of Marez*, 340 P.3d 520, 527 (Mont. 2014) ("[W]here a parent fails to make reasonable efforts to require a recalcitrant child to attend visitation as provided for in a parenting plan, the parent has not made a good faith effort to comply with the parenting plan, and a contempt order may be appropriate."). As the Supreme Court of Montana noted in *Marez*, "[a] parent is not a 'powerless bystander' in the decisions and actions of a child, and has 'an obligation to attempt to overcome the child's resistance' to visitation." *Id.* (quoting *In re Marriage of Rideout*, 77 P.3d 1174, 1182 (Wash. 2003)).[2] In other words, a parent is expected to do more than refrain from discouraging visitation; a parent is expected to take affirmative action to encourage visitation. Although the dissent views a "reasonable good faith efforts" standard as vague, good faith efforts may be considered in contempt proceedings to determine compliance with a court order. *See Arevalo v. Colo. Dep't of Human*

---

[2] In our view, reasonable good faith efforts would not require that the parent take actions that would harm a child. The magistrate specifically stated that the required discipline of the children would not include physical punishment. And although the magistrate used the term "discipline," a parent might, in his or her discretion, elect to employ a reward as an incentive to obtain compliance with the court's visitation order.

*Servs.*, 72 P.3d 436, 440 (Colo. App. 2003) (holding that department's failure to make good faith efforts supported trial court's conclusion that department intentionally failed to comply with court's order); *In re Marriage of Hartt*, 43 Colo. App. 335, 336, 603 P.2d 970, 971 (1979) (considering case wherein trial court deferred contempt sentence for two months to consider contemnor's good faith efforts to pay support and arrears payments).

¶ 23     Because a parent should make reasonable good faith efforts to comply with a court's visitation order, and the magistrate found with record support that the mother had not made such efforts, the contempt finding was not an abuse of discretion.

## VI.  Bias

¶ 24     We disagree with mother's sixth contention that the magistrate demonstrated a bias against her and should have been disqualified. Mother's allegations are based only on the magistrate's legal rulings and the resolution of conflicting evidence, which are not bases for disqualification.  *See Smith v. Dist. Court*, 629 P.2d 1055, 1057 (Colo. 1981) (holding that it is proper for a judge to use what has been learned in his or her judicial capacity in making observations about a matter); *see also People in Interest of S.G.*, 91 P.3d 443, 447

11

(Colo. App. 2004) (noting that a judge's ruling on a legal issue or the opinions formed against a party are not bases for disqualification); *In re Marriage of Nussbeck*, 899 P.2d 347, 350 (Colo. App. 1995) (adverse rulings do not constitute grounds for claiming bias or prejudice).

¶ 25 Further, the record reveals that mother did not seek the magistrate's disqualification under C.R.C.P. 97. *See In re Marriage of Zebedee*, 778 P.2d 694, 699 (Colo. App. 1988) (declining to consider bias argument when the matter was not raised in a C.R.C.P. 97 motion for disqualification). While mother argues in her reply brief that she previously requested the magistrate's recusal, we note that her prior request was legally insufficient because it was unsupported by an affidavit. *See* C.R.C.P. 97 (requiring that motion for disqualification be supported by an affidavit).

## VII. Rules of Professional Conduct

¶ 26 We decline to consider mother's seventh and final contention that father's attorney violated the rules of professional conduct. This court has no jurisdiction over allegations that an attorney has violated the Colorado Rules of Professional Conduct. That

jurisdiction lies in the supreme court and with the presiding disciplinary judge.  *See* C.R.C.P. 251.1(b).

## VIII.  Attorney Fees

¶ 27     Mother argues that the magistrate should have held a hearing on the reasonableness of father's attorney fee affidavit.  We agree.

¶ 28     Mother objected to father's fee affidavit on the basis that it was ambiguous and lacked clarity, and she requested a hearing on the issue of reasonableness.  Once she raised these assertions, the magistrate should have held a hearing on this issue.

¶ 29     While C.R.C.P. 107 does not impose an express requirement of a hearing on the amount of an attorney fee award, we nevertheless conclude that, upon request of a party, an evidentiary hearing must be held to determine the issue of reasonableness.  *See Pedlow v. Stamp*, 776 P.2d 382, 386 (Colo. 1989) (construing sections 13-17-101 to -203, C.R.S. 2016, as requiring an evidentiary hearing).

¶ 30     We thus remand for the district court to hold an evidentiary hearing on the issue of reasonableness of the award imposed as a contempt sanction.

## IX. Issues Raised in Reply Brief

¶ 31 We do not consider the arguments mother makes for the first time in her reply brief or those that seek to expand upon the contentions she raised in her opening brief. *See In re Marriage of Drexler*, 2013 COA 43, ¶ 24.

## X. Appellate Attorney Fees

¶ 32 We decline to award mother her requested "[a]ttorney's fees, fines and damages." Not only is mother not entitled to attorney fees as a pro se party, *see Smith v. Furlong*, 976 P.2d 889, 890 (Colo. App. 1999) (holding that there is no basis to award "attorney fees" to a pro se litigant, because no "attorney fees" exist in such situations), but she has failed to cite any legal basis for her request. *See* C.A.R. 39.1 (requiring that party requesting attorney fees explain the legal and factual basis therefor).

¶ 33 Father requests an award of his appellate attorney fees under C.R.C.P. 107(d)(2). Because father has incurred attorney fees "in connection with the contempt proceeding," *id.*, we remand the case for the district court to determine his entitlement to and the amount of attorney fees, if any, incurred on appeal. *See* C.A.R.

39.1; *Madison Capital Co. v. Star Acquisition VIII*, 214 P.3d 557, 562 (Colo. App. 2009).

## XI. Conclusion

¶ 34 We reverse that portion of paragraph 9 of the magistrate's order that mandates mother to discipline her children. The district court's order is reversed to the extent it adopts that portion of the magistrate's order.

¶ 35 In all other respects the orders are affirmed, and the case is remanded for the court to consider the reasonableness of the attorney fee award to father and father's request for appellate attorney fees under C.R.C.P. 107(d)(2).

JUDGE TERRY concurs.

JUDGE BERGER dissents.

JUDGE BERGER, dissenting.

¶ 36 This case presents an important issue of first impression: what must a custodial parent do to ensure that her teenaged children visit with their non-custodial parent, as prescribed by a parenting time order?

¶ 37 We all agree that the custodial parent may not do anything, expressly or impliedly, to thwart the court's parenting order. § 14-10-129.5, C.R.S. 2016; *In re Marriage of Cyr*, 186 P.3d 88, 91 (Colo. App. 2008). Any express or implied suggestion or encouragement to the child (who, by the terms of a parenting order, is not compelled to do anything) by the custodial parent that the child not engage in the court-ordered parenting time violates the order and subjects the custodial parent to the court's coercive and punitive contempt powers. *Cyr*, 186 P.3d at 91.

¶ 38 But the majority goes much further: it adopts a vague, undefined standard, the violation of which subjects the custodial parent to sanctions, including imprisonment. It holds that the custodial parent must make "reasonable good faith efforts to secure [a] child's compliance" with the parenting order.

16

¶ 39    There is a multitude of problems with this standard.  I begin with due process requirements.  Just as vague laws offend the Due Process Clause because they fail to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited," *People v. Holmes*, 959 P.2d 406, 414 (Colo. 1998) (quoting *High Gear & Toke Shop v. Beacom*, 689 P.2d 624, 630 (Colo. 1984)), so too do vague court orders that may subject a custodial parent to incarceration for violation of its terms.  *See Colo. Springs Bd. of Realtors, Inc. v. State*, 780 P.2d 494, 499 (Colo. 1989) ("[A]n injunction prohibiting conduct must be sufficiently precise to enable the party subject to the equitable decree to conform its conduct to the requirements thereof."); *Z.J. Gifts D-2, L.L.C. v. City of Aurora*, 93 P.3d 633, 639 (Colo. App. 2004) (same).

¶ 40    I do not understand how a custodial parent, acting entirely in good faith, can know with any level of confidence what are "reasonable good faith efforts to secure [a] child's compliance" with a parenting order.

¶ 41    The majority tells us that the district court may not specify what disciplinary action mother must take to meet the court-imposed standard, but gives neither mother nor any other custodial

parent any guidance as to what is actually required to conform her conduct to the law. Notably, the majority affirms paragraph seven of the contempt order, which orders mother to "prove that she is actually supporting [father's] parenting time by doing things like withholding electronics and other privileges to make clear to these children that they are expected to spend Thanksgiving Break with Father."

¶ 42    I take it that the majority is holding that some level of discipline is required to compel the child to spend time with the non-custodial parent, no matter what the child thinks. But what are the limits of that discipline? Must mother prohibit her children from participating in school athletics or other extracurricular activities? Or, visiting with their friends? How is the custodial parent supposed to determine what those limits are in any particular situation?[1]

---

[1] *In re Marriage of Marez,* 340 P.3d 520 (Mont. 2014), relied on by the majority, is factually distinguishable. There, the trial court found that the wife "likely influenced [the child] in her purported decision not to visit her father." *Id.* at 526. Such a finding would support a contempt finding under the standard I advocate. The balance of the opinion — the parts that the majority specifically relies upon — is dictum because it is unnecessary to the court's

¶ 43    Because parents' views on discipline of children vary enormously, and may depend on a particular parent's upbringing, culture, religion, and numerous other factors, this standard is, in reality, nothing less than an invitation for judges to impose their own beliefs on parents.

¶ 44    That is precisely what *Troxel v. Granville*, 530 U.S. 57 (2000), prohibits.  "[T]he Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made."  *Id.* at 72-73.  "[T]his fundamental right of parents encompasses the presumption that a fit parent will act in the best interests of his or her child."  *In Interest of C.T.G.*, 179 P.3d 213, 223 (Colo. App. 2007).

¶ 45    There is no evidence here that the mother's failure to punish her teenaged children for apparently refusing to spend time with their father is against the children's best interests.

¶ 46    Aside from due process notice problems and Troxel, there is another fundamental problem with the majority's standard: the lack

decision.  And, for the reasons that I discuss, the dictum is unsound and should not be followed.

of any statutory authorization. In Colorado, parenting orders are comprehensively governed by the Colorado Uniform Dissolution of Marriage Act, sections 14-10-101 to -133, C.R.S. 2016, but the majority does not cite and I am unaware of any statutory authority supporting the proposition that a custodial parent has a legal obligation to discipline her child in order to ensure that the child complies with a parenting order in favor of the non-custodial parent.

¶ 47    Recognizing that enforcement of parenting time orders may require a variety of tools, the General Assembly enacted section 14-10-129.5. After finding that a parent has violated a parenting time order, the statute authorizes the court to do any of the following:

- modify the existing order concerning the allocation of parental responsibilities, § 14-10-129.5(2)(b);

- require either or both parents to attend a parental education program at the expense of the non-complying parent, § 14-10-129.5(2)(b.3);

- require the parties to participate in family counseling at the expense of the non-complying parent, § 14-10-129.5(2)(b.7);

- require the violator to post bond or security to ensure future compliance, § 14-10-129.5(2)(c);

- require make-up time, § 14-10-129.5(2)(d);

- impose a fine or jail sentence, § 14-10-129.5(2)(e); or

- enter "[a]ny other order that may promote the best interests of the child or children involved," § 14-10-129.5(2)(h).

¶ 48    But nowhere does the statute expressly (or in my view, implicitly) authorize a court to order a parent to impose specific discipline on her child to force the child to engage in unwanted parenting time with the non-custodial parent.  Nor does allowing the parent, rather than the court, to choose the specific discipline solve the problems, for the reasons I discussed above.

¶ 49    To the extent that the majority relies on the "catch-all" provision of section 14-10-129.5(2)(h) to support its assumption that mother may be required to impose discipline, that reliance runs squarely into, and in my view violates, *Troxel*.  Despite any attendant inconvenience, courts must abide by *Troxel*'s fundamental principle that parents, not judges, make child rearing decisions.  *Troxel*, 530 U.S. at 72-73.

¶ 50    The magistrate and the district court did not abide by this principle, and the majority's judgment allows this constitutional violation to continue.

¶ 51    The problems I identify are particularly acute in this case because the children are teenagers. If the children were young children, who presumably always do what their parents tell them to do, the analysis and result might be different. But not with teenaged children who, unlike young children, are of an age and maturity to have a will of their own.

¶ 52    Though no Colorado appellate court has addressed this precise question, the North Dakota Supreme Court has. In *Votava v. Votava*, 865 N.W.2d 821, 824 (N.D. 2015), the court affirmed a district court's decision declining to hold the mother in contempt when her twelve- and fourteen-year-old children refused to visit their father. The trial court found, with record support, that "[i]t is almost impossible, at their age, to force them to make the visit. That's possible with younger children but with older children it's

not without some kind of physical altercation." *Id.* at 823.[2] The North Dakota Supreme Court agreed with that analysis.[3]

¶ 53 For these reasons, I would vacate the contempt order and I respectfully dissent from the majority's affirmance (with modifications) of the contempt order. If any similar contempt motions are brought by father, I would instruct the magistrate and the district court that mother may only be held in contempt for violation of the parenting order if the court finds that mother has thwarted the order by suggesting or encouraging, directly or indirectly, the children not to spend the court-ordered time with their father. I recognize this is a delicate inquiry, but it is not much

---

[2] I recognize that the appellate court in *Votava v. Votava*, 865 N.W.2d 821, 824 (N.D. 2015), was reviewing a lower court order that declined to find that the parent was in contempt for not forcing the teenaged and pre-teen children to have visitation with their father, while here, the magistrate made a finding that the mother had substantial control over her children. But *Votava* nevertheless recognizes the obvious — that the ages of the children matter in this context.

[3] At a bare minimum, if I am wrong and the standard adopted by the majority passes muster, the parenting order should advise the custodial parent of this legal obligation. Otherwise, not only does the custodial parent have to guess what coercive measures must be employed against a recalcitrant child, but the custodial parent must also guess whether there is such an obligation to discipline in the first instance.

different than other difficult factual determinations that a domestic relations court often is required to make.