24CA0517 Marriage of Danks 05-22-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0517
Weld County District Court No. 17DR30496
Honorable Shannon D. Lyons, Judge

---

In re the Marriage of

Megan Jo Dell,

Appellant,

and

Raymond Bryson Danks,

Appellee.

---

ORDER AFFIRMED

Division VI
Opinion by JUDGE KUHN
Welling and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 22, 2025

---

Sherman & Howard L.L.C., Jordan M. Fox, Hannah R. Taylor, Denver, Colorado, for Appellant

Antommaria & Rodionov, LLC, Amy M. Antommaria, Greeley, Colorado, for Appellee

¶ 1    In this post-dissolution of marriage case, Megan Jo Dell (mother) appeals the district court order requiring her to reimburse Raymond Bryson Danks (father) for fees related to a parental responsibility evaluator (PRE).  We affirm.

## I.    Background

¶ 2    In 2018, the district court dissolved the parties' marriage and allocated parental responsibilities for their twin boys.  A year later, mother relocated with the children to Oregon.

¶ 3    In the spring of 2022, the parties filed competing motions to modify parental responsibilities, and the district court set an evidentiary hearing for August 22, 2022.

¶ 4    Meanwhile, father moved for the appointment of Dr. Mark Kilmer as PRE.  Mother argued that a PRE's involvement would be contrary to the children's best interests, as it would offer no added value and create unnecessary delays.  She then asserted that Dr. Kilmer had an "irreconcilable conflict of interest" and could not participate in the proceedings.

¶ 5    Nonetheless, the district court appointed Dr. Kilmer to assess the children's best interests.  The court initially held father

responsible for Dr. Kilmer's fees but mentioned a possible reallocation at the hearing.

¶ 6     Mother moved to "strike" the appointment of Dr. Kilmer. She stated that her current attorney's law firm represented Dr. Kilmer in four separate legal matters spanning two decades. And given their past attorney-client relationship, her attorney possessed confidential information that could be pertinent during cross-examination. Citing Colo. RPC 1.9(c), she expressed concern over her attorney's potential conflict of interest and continuing duty of confidentiality.

¶ 7     Unconvinced, the district court denied mother's motion to strike.

¶ 8     Shortly before the hearing, father filed an update, alleging that mother's deliberate delays and noncooperation made it "impossible" for Dr. Kilmer to finish his report. Dr. Kilmer indicated that he could complete one in a few months. In any event, father urged the district court to move forward with the hearing, modify decision-making responsibility, and order the children to attend school in Colorado. Mother countered father's claims but also agreed to proceed with the hearing.

¶ 9    On August 26, 2022, following the hearing, the district court entered an order denying father's motion to substantially modify parental responsibilities (the August 2022 order). The court, however, adjusted the parenting schedule based on the children's Oregon school calendar.

¶ 10   Later, the district court advised the parties that Dr. Kilmer was under investigation and had been suspended from the PRE statewide eligibility roster. The court ordered the parties to address the following issues: (1) Dr. Kilmer's current progress on his report; (2) Dr. Kilmer's planned work before finalizing his report; (3) the anticipated timeframe for Dr. Kilmer to file his report; and (4) their positions on retaining or replacing Dr. Kilmer.

¶ 11   In a joint update, the parties notified the district court that Dr. Kilmer had billed father $18,450. Dr. Kilmer said he would complete his report only after receiving payment of the outstanding balance of $13,450. Mother noted that an $18,450 bill for a multi-state evaluation was to be expected. She was "troubled" that, despite offering to cover Dr. Kilmer's fees, father took no action to ensure payment. According to her, because father was unwilling to pay, Dr. Kilmer ceased the evaluation and "finalized" the report

without her input. She worried an incomplete report would not help the court resolve the parties' parenting time disputes. She added that "[r]egarding Dr. Kilmer's [r]eport and the effect his suspension has on that [r]eport, [she] . . . [was] unable to evaluate her position without seeing the report itself." As well, she raised ethical concerns about Dr. Kilmer. She alleged that Dr. Kilmer remarked that 90% of domestic violence claims were fabricated, and as a victim of father's domestic violence, she opposed any order "requiring [her] [to] pay for the incomplete and ethically questionable report."

¶ 12    Unable to settle the debt, father asked the district court to compel mother to pay it and to consider the report when finished.

¶ 13    On November 15, 2022, the district court found that mother would not object to Dr. Kilmer's continued involvement if the report was favorable but would likely object if it was unfavorable (the November 2022 order). The court ruled that it would consider the report. However, it also ruled that it would "not order [m]other to pay for [f]ather's contractual obligation." Thus, father remained responsible for the outstanding balance at that time.

¶ 14     Around a month later, Dr. Kilmer completed his evaluation, culminating in a fifty-one-page written report.  He conducted individual interviews with each party, followed by subsequent meetings; observed parent-child interactions at each party's home; performed psychological testing; and reviewed both parties' collateral documents.  Providing additional information, the report highlighted the parties' continuing conflict and how it affected the children's best interests.  In the end, Dr. Kilmer recommended maintaining the status quo regarding parental responsibilities.

¶ 15     In May 2023, father filed a motion requesting that mother reimburse him for the fees he had paid to Dr. Kilmer.  He highlighted the substantial income disparity between the parties, noting her monthly earnings of $25,000 against his $7,316.

¶ 16     In response, mother argued that Dr. Kilmer's report was unnecessary as it had no bearing on the August 2022 order and that the November 2022 order already determined that father would bear the fees.

¶ 17     On February 7, 2024, the district court granted father's motion, explaining,

> The [c]ourt has considered [m]other's [r]esponse and finds that despite her initial objection to Dr. Kilmer's appointment as PRE, she did not have any objection to his submission of the report. Furthermore, disagreement with the appointment of [Dr. Kilmer] does not necessarily signify that a parent should bear no cost for a report intended to benefit the children.

The court directed mother to reimburse father $9,225, or half of Dr. Kilmer's total fees.

¶ 18 Mother now appeals.

## II. Analysis

¶ 19 Mother contends that the district court erred because (1) its order for reimbursement was clearly erroneous and an abuse of discretion and (2) the reimbursement was barred by the doctrine of res judicata. We address each contention in turn.

### A. Reimbursement of Dr. Kilmer's Fees

¶ 20 Mother argues that the district court's reimbursement order must be reversed because (1) the court clearly erred when it found that she "did not have any objection to [Dr. Kilmer's] submission of the report"; (2) the report was unnecessary as it played no role in the August 2022 order; (3) the court's findings were not sufficiently detailed; and (4) by the time the PRE report was submitted, Dr.

6

Kilmer was no longer eligible to serve as a PRE. We are not persuaded.

### 1. Applicable Law and Standard of Review

¶ 21 Under section 14-10-127(1)(a)(I)(C), C.R.S. 2024, a district court has discretionary authority to determine what constitutes a reasonable fee for a PRE evaluation and to allocate those fees between the parties. *See* 19 Frank L. McGuane, Jr. & Kathleen A. Hogan, *Colorado Practice Series: Family Law & Practice* § 28:21, Westlaw (2d ed. database updated June 2024).

¶ 22 A district court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law. *In re Marriage of Pawelec*, 2024 COA 107, ¶ 45. We accept the court's factual findings unless clearly erroneous, meaning that the record does not support them. *See In re Marriage of Gibbs*, 2019 COA 104, ¶ 9; *see also In re Marriage of Dean*, 2017 COA 51, ¶ 8.

### 2. The District Court Did Not Abuse its Discretion by Splitting the Cost of the PRE Report Between the Parties

¶ 23 First, contrary to mother's contention, the district court did not clearly err by finding that mother did not object to Dr. Kilmer's report or its necessity. *See Gibbs*, ¶ 9. Throughout the

7

proceedings, mother made inconsistent statements and changed her position regarding the report. For example, in the joint status report regarding the PRE, mother "note[d] [that] she [wa]s unable to evaluate her position without seeing the report itself." And while she said that she had concerns regarding Dr. Kilmer's suspension and the completeness of the report, she did not object to the report itself. Instead, she only opposed paying for the report.

¶ 24 Regardless, there is evidence in the record to support the district court's finding that, based on her status report, mother was waiting to object to the report based on what it said and that she had "abstain[ed] on the question of Dr. Kilmer's suitability to remain as PRE." Thus, the court's determination that mother "did not have any objection to [the] submission of the PRE report" is supported by the record. It is, therefore, not clearly erroneous, so we have no basis to disturb it. *See id.*

¶ 25 Second, the court's order refutes mother's argument that the PRE report was unnecessary or played no role in the proceedings. The court explained that the report was prepared for the children's benefit. And while Dr. Kilmer's opinion itself was not relied on, the court did reference the children's statements contained within the

report.  *See In re Marriage of Danks*, slip. op. at ¶ 29 (Colo. App. No. 23CA1962, March 27, 2025) (not published pursuant to C.A.R. 35(e)).  At a minimum, the report provided the court with additional factual information regarding the continuing conflict between the parties, which impacted the children's best interests.

¶ 26     Third, we are not persuaded by mother's general assertion that, under Colorado case law, the district court cannot award expert fees when that expert's testimony was later ruled inadmissible.  The court made no such ruling in this case.

¶ 27     Fourth, we decline to consider mother's other argument, presented for the first time on appeal, that the reimbursement order was improper because at the time the order was entered Dr. Kilmer was no longer eligible to serve as a PRE in Colorado under section 14-10-127.  She did not raise this specific issue in the district court — even though she had the opportunity to do so after Dr. Kilmer had been removed from the eligibility list.  Accordingly, it is not preserved, and we will not address it.  *See In re Marriage of Turilli*, 2021 COA 151, ¶ 12 (to preserve an issue for appeal, the issue must be brought to the district court's attention so that the court is allowed to rule on it); *see also In re Marriage of Crouch*, 2021 COA 3,

¶ 13 (an appellate court generally will not review an argument raised for the first time on appeal).

¶ 28    Finally, we note that a court has considerable discretion when determining the allocation of PRE fees.  *See* § 14-10-127(1)(a)(I)(C).  The record shows that mother actively participated in the evaluation and earned substantially more than father.  And though the court's findings could have been more detailed, we can understand the basis of its decision.  *See Gibbs*, ¶ 9.  Thus, under the circumstances here, we cannot say that the decision requiring mother to share responsibility for the fees was manifestly arbitrary, unreasonable, or unfair.  *See Pawelec*, ¶ 45.

### B.    Claim Preclusion

¶ 29    Relying on claim preclusion (historically called res judicata), mother contends that the November 2022 order, which established father's sole responsibility for Dr. Kilmer's fees, foreclosed the court from later ordering reimbursement.  *See In re Parental Responsibilities Concerning T.L.B.*, 2012 COA 8, ¶ 39.  We disagree.

¶ 30    We review de novo legal determinations, such as the applicability of the doctrine of claim preclusion.  *Madalena v. Zurich Am. Ins. Co.*, 2023 COA 32, ¶ 64.

¶ 31    Claim preclusion bars raising a claim in a second action that was, or could have been, litigated in a prior proceeding.  *T.L.B.*, ¶ 39; *In re Marriage of Tozer*, 2017 COA 151, ¶ 10.  Its purpose is to prevent needless litigation.  *In re Marriage of Aragon*, 2019 COA 76, ¶ 23.

¶ 32    However, claim preclusion applies only to later, independent proceedings; the doctrine is not properly invoked to preclude a party's later assertions in the *same* litigation.  *Tozer*, ¶ 10; *In re Marriage of Mallon*, 956 P.2d 642, 645 (Colo. App. 1998).

¶ 33    Because the district court's grant of father's motion for reimbursement was entered within the same ongoing proceeding and not in a later, independent one, it is not barred by claim preclusion.  *See Tozer*, ¶ 11.

### III.    Appellate Attorney Fees and Costs

¶ 34    Father seeks an award of appellate attorney fees under C.A.R. 39.1.  We deny the request because he fails to state a legal and factual basis for the award.  *See* C.A.R. 39.1; *see also Dean*, ¶ 32.

¶ 35    Because we affirm the judgment, father is entitled to an award of appellate costs.  *See* C.A.R. 39(a)(2) ("[I]f a judgment is affirmed, costs are taxed against the appellant.").  The district court shall

determine the amount of such costs. *See* C.A.R. 39(c)(2) (a party seeking costs must file an itemized and verified bill of costs in the district court within fourteen days of entry of the appellate mandate); *see also In re Marriage of Capparelli*, 2024 COA 103M, ¶ 38.

## IV.    Disposition

The order is affirmed.

JUDGE WELLING and JUDGE SCHUTZ concur.