24CA0663 Marriage of Delker 06-12-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0663
Pueblo County District Court No. 21DR711
Honorable Dorothy A. Radakovich, Magistrate

---

In re the Marriage of

Christopher Lee Delker,

Appellant,

and

Yessica Rodriguez,

Appellee.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE TOW
Dunn and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 12, 2025

---

Christopher Lee Delker, Pro Se

TurnerZamarripa, Attorneys at Law, LLC, Jennifer A. Zamarripa, Pueblo, Colorado, for Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1       In this dissolution of marriage case between Christopher Lee Delker (father) and Yessica Rodriguez (mother), father appeals the trial court's permanent orders regarding property division and child support. We affirm the property division component but reverse in part the child support component of the permanent orders and remand to correct the commencement date for mother's support obligation.

## I. Background

¶ 2       In the notice of electronic record certified to this court, the Pueblo County clerk noted that no transcripts were requested, so none were included in the appellate record. Therefore, the following facts are taken from the court file.

¶ 3       Father filed an action to dissolve the parties' marriage in 2021. In October 2022, the trial court entered what it titled "permanent orders"[1] allocating parental responsibilities concerning the parties' one child. But the court did not enter a decree dissolving the marriage at that time, nor did it address any financial matters — such as dividing the marital estate or establishing child or spousal

---

[1] Orders entered before the decree of dissolution are generally considered temporary orders. § 14-10-108, C.R.S. 2024.

support — because the parties had not complied with their financial disclosure obligations.

¶ 4 After several attempts to secure the parties' compliance with their financial disclosure obligations, which they eventually partially satisfied, the court conducted an evidentiary hearing on the remaining issues on January 18, 2024. The court took the matter under advisement and, on April 1, 2024, entered a decree dissolving the marriage, dividing the marital estate, and concluding that the parties had waived maintenance. Still, however, child support was not addressed.

¶ 5 After father appealed, we stayed the matter until finality could be obtained, which required the trial court to address child support. The trial court ultimately entered a child support order, requiring mother to pay ten dollars to father each month, retroactive to December 1, 2022.

¶ 6 Father appeals the orders related to division of property and child support.

## II.    Property Division

¶ 7    Father contends that the court erred by dividing the marital estate based on mother's incomplete financial disclosures.  We discern no error.

### A.    Additional Background

¶ 8    In the decree, the court noted that at the start of the January 2024 evidentiary hearing, father raised the lack of financial documentation provided by mother.  The court stated that it had previously issued an order to compel mother to provide certain financial disclosures; mother filed a sworn financial statement with the court; mother later filed an updated sworn financial statement the day before the hearing; and mother alleged that she provided all required disclosures.  The court noted that father took no action between the order to compel and the evidentiary hearing to enforce the order, including not even reaching out to mother's counsel to ask about the status of the discovery.

¶ 9    The court further stated in the decree that it declined to continue the hearing, observing that neither party had fully complied with their discovery obligations under C.R.C.P. 16.2.  The court imposed no sanctions, noting that father had not requested

any. The court also made specific findings with respect to different property owned by the parties based on the testimony at the hearing and divided it.

## B. Analysis

¶ 10      As a threshold matter, we note that it is an appellant's responsibility to furnish us with a record on appeal, including "transcripts of all proceedings necessary for considering and deciding the issues on appeal." C.A.R. 10(d)(3). Without a transcript for us to review, we cannot evaluate whether the evidence and testimony sufficiently supported the trial court's judgment. Consequently, "[w]here the appellant fails to provide such a transcript, the reviewing court must presume that the record supports the judgment." *In re Marriage of Dean*, 2017 COA 51, ¶ 13.

¶ 11      Such is the case here. Because father did not provide us with a transcript of the hearing, we must presume the record supports the trial court's findings and its judgment. *See id.*

¶ 12      Moreover, to the extent father seeks to challenge the lack of sanctions for mother's nondisclosures, he has failed to preserve that issue. As noted, he did not request any sanctions from the

trial court. *See In re Marriage of Hall*, 971 P.2d 677, 678 (Colo. App. 1998) (noting that we may not address arguments not made to the trial court); *see also In re Marriage of Davis*, 252 P.3d 530, 537 (Colo. App. 2011) ("Sanctions for nondisclosure under C.R.C.P. 16.2(j) are discretionary and the trial court is not required to impose sanctions for a violation of pretrial procedures."). We do not review unpreserved appellate claims. *In re Estate of Ramstetter*, 2016 COA 81, ¶ 12.

### III. Child Support

¶ 13 Father next challenges the trial court's child support determination because it (1) was based on mother's incomplete financial disclosures; (2) factored in mother's unsupported claim that she was mentally incapacitated from October 2022 to January 2024; and (3) was retroactive only to December 1, 2022, rather than February 1, 2022 (the day father became the custodial parent). We reject the first two contentions but agree with the third.

### A. Additional Background

¶ 14 In its child support order, the court noted that mother had filed two financial statements stating that she had no income due to a mental health crisis. The court found, based on the testimony

and evidence throughout the case, that mother was suffering from severe mental health issues. The court also observed that mother had testified that she had applied for social security disability benefits based on her mental health issues but had been denied and was in the process of appealing that denial. The court ordered mother to pay child support of ten dollars per month, retroactive to December 1, 2022.

## B.    Analysis

¶ 15    An award of child support is generally within the sound discretion of the trial court and will not be set aside absent an abuse of discretion. *In re Marriage of Hartford*, 612 P.2d 1163, 1164 (Colo. App. 1980). A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if the court misapplies the law. *In re Marriage of Young*, 2021 COA 96, ¶ 7.

¶ 16    First, to the extent father largely reiterates his argument that mother's financial disclosures were incomplete, we again discern no error based on the record that we have. *See Dean*, ¶ 13. The court credited mother's testimony that she had applied for social security disability benefits based on her mental health issues, was denied benefits, and was appealing that denial. We do not have the

6

hearing transcript and thus must assume it would support these findings. *See id.*

¶ 17     Similarly, we must reject father's contention that there was no evidence that mother was mentally incapacitated from October 2022 to January 2024. The court made its finding that mother was suffering from severe mental health issues based, in part, on the testimony at the hearing. Again, because we do not have the hearing transcript, we must presume the trial court did not err by making this finding.[2] *See id.*

¶ 18     Finally, father contends that the child support order should have been retroactive to February 1, 2022 — when the first temporary order regarding allocation of parental responsibilities was entered — not to December 1, 2022. We agree that the trial court ordered child support retroactive to the incorrect date.

¶ 19     The record reflects that the parties were exercising equal parenting time until mother moved with the child to Kansas — in violation of the statutory automatic temporary injunction

---

[2] The record contains mother's two financial disclosures, which support the court's finding that she had no income due to a mental health crisis.

prohibiting unilateral removal of the child from the state, *see* § 14-10-107(4)(b)(I)(C), C.R.S. 2024 — and refused to permit father to see the child. In response, the trial court entered a temporary order on February 1, 2022, allocating sole parenting time to father. The record reflects that father has been the primary custodial parent since that date.

¶ 20 The court ordered child support retroactive to December 1, 2022. According to the court's order, this date was chosen because it was the first day of the month after the court received father's sworn financial statement. Apparently, the court deemed this to be the proper date to begin mother's child support obligation because it lacked the information to establish such an obligation before receiving father's information. This was erroneous for several reasons.

¶ 21 First, section 14-10-115(2)(a), C.R.S. 2024, allows the court to order either or both parents to pay child support "for a time period that occurred after the date of the parties' physical separation or the filing of the petition or service upon the respondent, whichever date is latest." The statute does not contemplate the date financial disclosures are made as a beginning point for child support. *See*

*id.*; *see also* § 14-10-122(1)(c), C.R.S. 2024 (identifying possible dates for retroactive application of a modification of an existing child support order, including, in some circumstances, the date of a change in primary custody). The court thus misapplied the law.

¶ 22 Second, if the court intended December 1, 2022, to reflect the date it was first able to determine child support, it miscalculated. As of December 1, 2022, mother still had made no disclosures. She made her first disclosure on March 7, 2023. Thus, in December 2022, the court still lacked sufficient information to establish the child support obligation. Choosing December 1, 2022, to begin child support was therefore manifestly arbitrary.

¶ 23 And finally, to the extent the court intended this as a sanction for father's late financial disclosures, we again note that father rectified his nondisclosures *before* mother did. Yet this sanction lays the consequence for both parties' noncompliance solely at the feet of father by requiring him to forfeit nine months of child support. That is both manifestly arbitrary and manifestly unfair.

¶ 24 But we do not agree with father that the retroactive date should be February 1, 2022. As noted, child support is retroactive to the latest of three possible dates: separation, filing of the petition,

9

or service of the same.  § 14-10-115(2)(a).  Here, the latest of the three dates was November 1, 2021, when mother was served with the dissolution of marriage petition.  Thus, child support should have been ordered retroactive to November 1, 2021.

¶ 25    That being said, father is *functionally* correct, in that the record reflects that February 1, 2022, is the first date either parent would actually owe the other support.  Before that date, the parties — who both have extremely limited resources — shared parenting time (other than when mother improperly excluded father from the child's life).  Thus, from the date mother was served with the petition until the date of the temporary orders, it is logical to presume that neither party owed the other for child support.  However, beginning February 1, 2022, father was the sole custodial parent.  There is no reason mother's child support obligation should not be calculated from that date.[3]

---

[3] To be sure, we are not suggesting that section 14-10-122(1)(c), C.R.S. 2024, applies here.  This was not a modification of an existing child support order.  But when initially establishing the parties' respective child support obligations and any arrearage, it is appropriate to consider the parties' actual income and parenting time arrangements, including any changes thereto, during the period between service of the petition and the entry of the order.

### IV. Mother's Appellate Attorney Fees Request

¶ 26    Mother requests appellate attorney fees under C.A.R. 39.1 and section 13-17-102, C.R.S. 2024, contending that father's appeal was substantially frivolous.  We disagree.

¶ 27    Father's appeal is partially successful.  Had he not appealed in the first place, no child support order would exist.  And he correctly noted the incorrect commencement date for mother's child support obligation.  Thus, contrary to mother's claim, "all of [father's] claims" are *not* frivolous.  We thus decline to award mother her appellate attorney fees.

### V. Disposition

¶ 28    The child support order is reversed in part, and the case is remanded with instructions to impose mother's monthly obligation of ten dollars retroactive to February 1, 2022, and correct any arrearage accordingly.  The permanent orders are affirmed in all other respects.

JUDGE DUNN and JUDGE TAUBMAN concur.