25CA0895 Marriage of Edwards 05-21-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0895
El Paso County District Court No. 22DR30884
Honorable Jill Brady, Judge

In re the Marriage of

Dillon L. Edwards,

Appellant,

and

Michaela Edwards n/k/a Michaela Timney,

Appellee.

APPEAL DISMISSED IN PART
AND ORDER AFFIRMED

Division IV
Opinion by JUDGE BROWN
Freyre and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 21, 2026

Thomas Law Group, P.C., Sergei B. Thomas, Denver, Colorado, for Appellant

No Appearance for Appellee

¶ 1    In this post-dissolution of marriage case involving Dillon L. Edwards (father) and Michaela Edwards, now known as Michaela Timney (mother), father appeals the denial of his motion concerning parenting time disputes under section 14-10-129.5, C.R.S. 2025. We dismiss the appeal in part and otherwise affirm.

## I.    Relevant Facts

¶ 2    In March 2023, the district court entered a decree dissolving the parties' marriage. At that time, the court named mother the primary residential parent of the parties' only child, who was then a toddler. Given father's mental health struggles and his "very serious" problems with alcohol, the court established a graduated parenting time for him:

- Supervised Parenting Time: For the first four weeks, father could exercise two supervised visits per week, each lasting four hours. If the parties agreed on an individual supervisor, they could use that person. If not, supervision was to occur at the Court Appointed Special Advocates (CASA) facility. Father had to take two ethyl glucuronide (EtG) tests each week and submit clean results.

- Phase I: After four weeks of clean EtG tests and four weeks of supervised parenting time, father could exercise unsupervised parenting time on Fridays and Saturdays for four hours each day, with continued testing.[1]

- Phase II: With another month of clean results, father's parenting time would increase to eight hours each Friday and Saturday, with continued testing. He was required to return to Phase I if he had a positive or diluted test.

- Phase III: Following another month of clean results, father could exercise overnight parenting time on the first, second, and fourth weekends of each month. If he submitted clean results for a month after beginning overnights, he no longer needed to test.[2]

- Father had to abstain from alcohol or marijuana during his parenting time and for the twelve hours preceding it.

---

[1] Although "Phase I" was clearly a second phase of parenting time, it was the first phase of unsupervised parenting time and mirrored "Phase One" of the temporary orders the district court entered on October 4, 2022, and repeatedly cross-referenced in the 2023 order.
[2] In the 2023 order, the court erroneously dubbed this "Phase IV." In its oral ruling on father's parenting time disputes motion, the court recognized that it should have called this part of the parenting plan Phase III.

- Father was permitted fifteen-minute video calls with the child on Mondays, Wednesdays, and Fridays, between 6:30 p.m. and 7:30 p.m. He would notify mother when he was ready to start the call, and she would initiate it. Calls were not to occur on days when he had parenting time.

The court also found that father committed domestic violence against mother during the marriage.

¶ 3 In July 2024, father filed a motion concerning parenting time disputes under section 14-10-129.5. He alleged that mother had prevented him from advancing through the parenting plan by refusing to complete the registration for supervised parenting time at a facility called Teresa's Place. He had tested negative for alcohol for four consecutive weeks. And although he acknowledged positive marijuana results, he asserted that he did not consume it during his parenting time or for twelve hours beforehand.

¶ 4 In March 2025, the district court held an evidentiary hearing. The court credited mother's testimony over father's and concluded that she had not violated the supervision and video call provisions of the 2023 order. The court found that the parties did not agree on an individual supervisor and that father failed to utilize the CASA

facility, the "backup" option. The court also found that all but two disputed video calls had occurred consistent with the 2023 order. The court nevertheless declined to assign blame to mother for those two calls, reasoning that while she did not respond to father's messages seeking to initiate them, he failed to prove that she had not made the calls.

¶ 5    The district court then noted that supervised parenting time had recently begun at Teresa's Place; father had not tested in June, November, or December of 2023 and later stopped testing altogether; and father had positive test results for marijuana. As a result, the court "clarified" the 2023 order:

- Father would have four more supervised visits at Teresa's Place, while undergoing EtG testing.

- After four weeks of clean results and supervised visits, father would have unsupervised parenting time on Fridays and Saturdays for four hours each day, with continued testing.

- After another month of clean results, father's unsupervised parenting time on Fridays and Saturdays would increase to eight hours each day, with continued testing.

- Following another month of clean results, father would move to overnights on the first, second, and fourth weekends of each month.

- If father tested positive for alcohol or marijuana or submitted diluted results before the start of overnights, he would be required to restart the process from the first phase with supervised visitation at Teresa's place.

¶ 6    After reiterating its previous domestic violence finding, citing father's online threats and name-calling toward mother, and crediting mother's testimony about her safety concerns, the court ordered that mother did not have to disclose her residential address and that all parenting time exchanges would occur at a police station.

## II.    Motion Concerning Parenting Time Disputes

¶ 7    Father contends that the district court erred by (1) determining that mother did not violate the 2023 order; (2) failing to sanction mother for her violations or award father his attorney fees; and (3) modifying the existing parenting time orders. We are not persuaded.

### A. Law Governing Parenting Time Disputes

¶ 8    Section 14-10-129.5(1) allows a party to file a motion with the district court when the other party is not complying with an existing parenting time order.  The court must determine whether there has been or is likely to be "substantial or continuing noncompliance." *Id.*  If, after a hearing, the court finds that a party has not complied with the parenting time order, it shall issue remedial orders, including attorney fees.  § 14-10-129.5(2), (4).

¶ 9    The district court's discretion over parenting time matters is broad, and we presume its decision is correct if it is supported by competent evidence in the record.  *In re Marriage of Badawiyeh*, 2023 COA 4, ¶ 9.  A court abuses its discretion when it misapplies the law or acts in a manifestly arbitrary, unfair, or unreasonable manner.  *In re Marriage of Pawelec*, 2024 COA 107, ¶ 45.

### B. Supervised Visitation

¶ 10    Father contends that the district court erred by determining that mother did not violate the portion of the 2023 order allowing him supervised visitation.  We disagree.

¶ 11    At the hearing, father argued that mother failed to comply with the 2023 order because she did not timely complete the required

registration for supervised parenting time at Teresa's Place. But the court interpreted its prior order to mean that father had two paths to start supervised parenting time: (1) using a mutually agreeable individual supervisor; or (2) using the CASA facility. Because the parties were not required to agree on a supervisor, and father did not utilize the CASA facility, the court determined that mother's delayed registration at Teresa's Place, a facility not specified in the plan, did not violate the order. The court further found that father did not comply with the EtG testing, had positive results for marijuana, and stopped testing altogether.

¶ 12    The record supports the court's findings and ultimate determination. Both parties indicated that they could not agree on a permanent individual parenting time supervisor. Father testified that he understood that the CASA facility was the fallback option under the 2023 order. He said that the facility would not allow him to register without a "new decree." Mother countered that father chose not to go to the CASA facility because he did not want to make the long drive from Pueblo, where the parties lived, to Colorado Springs, where the facility was located.

¶ 13 Father testified that he learned of Teresa's Place from his therapist in June 2023. Although he immediately asked mother to complete the registration, she delayed doing so until February 2025. Mother explained, which the court credited, that the facility could not accommodate her work schedule or the child's school schedule and that the facility did not have weekend supervision until February 2025. Additionally, the record indicates that father was not compliant with the EtG testing requirements and had tested positive for marijuana several times.

¶ 14 Citing some of the exhibits admitted at the hearing, father argues that the district court "failed to address . . . uncontroverted testimony or make any findings regarding [m]other's clear and repeated noncompliance with the court-ordered supervised visitation arrangements." But the evidence was controverted. And we decline his invitation to reweigh it in his favor and substitute our judgment for that of the district court. *See In re Marriage of Thorburn,* 2022 COA 80, ¶ 49 (it is for the district court to determine the weight, probative force, and sufficiency of the evidence and any inferences and conclusions to be drawn therefrom); *In re Marriage of Nelson,* 2012 COA 205, ¶ 35 (When

8

reviewing for an abuse of discretion, even where "there is evidence in the record that could have supported a different conclusion, we will not substitute our judgment for that of the district court."); *see also In re Marriage of Collins*, 2023 COA 116M, ¶ 21 (an appellate court may presume that the district court considered all of the evidence admitted); *In re Marriage of Amich*, 192 P.3d 422, 424 (Colo. App. 2007) ("The [district] court can believe all, part, or none of a witness's testimony, even if uncontroverted . . . .").[3]

¶ 15    Father also asserts that mother violated the parenting time order by refusing to allow him unsupervised visits after he demonstrated four consecutive weeks of clean test results. In his view of the 2023 order, he was entitled to transition to Phase I unsupervised parenting time following four weeks of clean tests — whether or not he exercised four weeks of supervised parenting

---

[3] Father also argues that mother violated section 14-10-131(2), C.R.S. 2025, by "modifying the parenting time absent a court order." But he does not tell us why the statute governing modifications of decision-making responsibility applies to this section 14-10-129.5, C.R.S. 2025, proceeding. *See In re Marriage of Zander*, 2019 COA 149, ¶ 27 (an appellate court may decline to consider an argument not supported by legal authority or any meaningful legal analysis), *aff'd*, 2021 CO 12. So, we will not address the argument. *See id.*

time. But that is not what the 2023 order required. Rather, the 2023 order required that father "complete the [s]tipulation filed on October 26, 2022[,] before moving onto Phase I of parenting time." And the October 2022 stipulation clearly provided that "[a]fter [four] consecutive weeks of clean ETG tests *and [four] weeks of supervised visits* . . . [father] will resume" Phase I parenting time. (Emphasis added.)[4] Father never completed four weeks of supervised visits, so he was not entitled to unsupervised visits. As a result, mother did not violate the 2023 order as alleged.

¶ 16 On this record, we conclude that the district court did not abuse its broad discretion by determining that father failed to prove that mother's conduct violated the order. *See Badawiyeh*, ¶ 9.

---

[4] We acknowledge that the 2023 order restated only some of the terms of the October 2022 stipulation, providing that "[f]ollowing [four] weeks of clean ETG tests, [father] may move to Phase I" parenting time. But the 2023 order clearly incorporated the October 2022 stipulation. Thus, the only reasonable interpretation is that father was required to demonstrate four weeks of clean tests *and* complete four weeks of supervised parenting time before proceeding to unsupervised parenting time.

### C. Video Calls

¶ 17 Next, father contends that the district court should have determined that mother violated the portion of the 2023 order authorizing him to have video calls with the child. We disagree.

¶ 18 To begin, father says that mother's pattern of noncompliance and denial of video calls were made "abundantly clear" in Exhibit 10, which purportedly shows their online communications from August 18, 2022, through February 2025. But we will not scour the exhibit in search of evidence supporting his claims for which he provides no specific citations. *See Cikraji v. Snowberger*, 2015 COA 66, ¶ 10 (an appellate court will not comb the record for facts to support undeveloped arguments); *O'Quinn v. Baca*, 250 P.3d 629, 631-32 (Colo. App. 2010) (parties should not expect an appellate court to peruse the record without the help of pinpoint citations).

¶ 19 Of the specific communications father identifies, the February 27, 2023, message predates the permanent orders mother was alleged to have violated. And neither that message nor the December 20, 2024, message appear in the part of Exhibit 10 we have in the appellate record. It is father's responsibility, as the appellant, to provide us with a complete record showing the

11

asserted errors. *See People v. Wells*, 776 P.2d 386, 390 (Colo. 1989). The missing parts of the record are significant because we must presume they support the district court's findings and conclusions. *See Love v. Klosky*, 2016 COA 131, ¶ 18, *aff'd on other grounds*, 2018 CO 20.

¶ 20 Father also points to an exchange from Friday, October 20, 2023, which does appear in Exhibit 10. At 6:30 p.m., father checked with mother to see if the child was available, and she responded that they were at a birthday party. At 10:25 p.m., she informed him that they had just gotten home and asked whether he wanted to call then or wait until tomorrow. About fifteen minutes later, he asked if they were still awake. The exchange ended there.

¶ 21 The district court did not hear any evidence of that exchange at the hearing, nor did the court address it in the 2025 order. Regardless, the record supports the court's conclusion that father did not meet his burden. Although the exhibit establishes that mother did not respond to father's last question, the 2023 order does not require mother to respond to father's messages; rather, it provides that "[f]ather will send a message through the parenting app . . . when he is ready to begin the call, and then [m]other shall

12

initiate the call to [f]ather." Consequently, the absence of a response from mother to father's communication does not prove that mother never made that video call.

¶ 22    But even assuming there were three missed calls over about two-and-a-half years, we perceive no abuse of discretion in the district court's determination that there was no "substantial or continuing noncompliance" under section 14-10-129.5(1).[5]

### D.    Sanctions and Attorney Fees

¶ 23    Because we affirm the district court's order concluding that mother did not violate the 2023 order, it follows that the court did not err by declining to sanction mother under section 14-10-129.5(2) or award father attorney fees under section 14-10-129.5(4).

### E.    Unpreserved Contentions

¶ 24    Father contends that the district court applied the wrong legal standard under *In re Marriage of Dean*, 2017 COA 51, ¶ 23, by failing to make findings about mother's "good faith or ability to

---

[5] To the extent father contends that the district court erred by not applying the preponderance of the evidence standard from section 13-25-127, C.R.S. 2025, he fails to develop the argument, so we decline to address it. *See Zander*, ¶ 27.

comply" with the 2023 order. We do not address the contention for two reasons. First, he did not raise this issue in the district court, so it is not preserved for our review. *See Pawelec*, ¶ 38 (declining to review as unpreserved an issue that was never raised before or decided by the district court). Second, even if preserved, he does not explain how *Dean*, which addressed remedial contempt, applies in a section 14-10-129.5 proceeding. *See Zander*, ¶ 27; *see also Cikraji*, ¶ 10.

¶ 25 Likewise, because father never raised it in the district court, we will not consider his contention that mother's "repeated refusal to comply with court-ordered visitation and communication" interfered with his fundamental liberty interest in the child. *See Pawelec*, ¶ 38; *see also McGihon v. Cave*, 2016 COA 78, ¶ 16 (appellate court does not consider constitutional issues raised for the first time on appeal).

### F. Alleged Modifications to the Parenting Time Orders

¶ 26 Father contends that the district court improperly modified the 2023 order by (1) doing so in the absence of a motion to modify or a finding of endangerment; (2) removing the parties' ability to agree on a supervisor; (3) requiring all supervised visits to occur only at

Teresa's Place (even though that was the facility he had asked for); (4) imposing a "rigid, time-based progression" for his parenting time; (5) requiring that any diluted or failed EtG test before unsupervised parenting time would restart the process; and (6) compelling him to send all test results directly to mother's attorney.[6]  After briefing, this court issued a show cause order directing father to explain why this appeal should not be dismissed, in whole or in part, as moot.  By then, significant time had passed since the district court entered its order, and the supervision and testing requirements appeared to have expired.  In response, father represented that he was currently exercising unsupervised parenting time but maintained that the appeal was not moot.

¶ 27    An issue is moot when the relief requested, if granted, would have no practical effect on an existing controversy.  *See In re Marriage of Thomas*, 2021 COA 123, ¶ 21.  An appellate court will not render an opinion on the merits of an issue when later events have rendered the issue moot.  *In re Parental Responsibilities*

---

[6] To the extent father contends that the district court's alleged modification of the parenting time orders denied him due process, he does not develop the argument, so we will not address it.  *See Zander*, ¶ 27.

*Concerning S.Z.S.*, 2022 COA 105, ¶ 50; *see In re Marriage of Salby*, 126 P.3d 291, 301 (Colo. App. 2005) (original parenting time orders deemed moot when they were superseded by later modified orders).

¶ 28    Father is now in the final, unsupervised phase of the 2025 order and is no longer subject to testing or supervision requirements. Because any order disposing of those challenged "modifications" would have no practical effect, we dismiss this part of his appeal as moot. *See Thomas*, ¶ 21; *see also S.Z.S.*, ¶ 50.

¶ 29    Father also contends that the court improperly modified the 2023 order by requiring all parenting time exchanges to take place at a police station. We conclude that he invited any error.

¶ 30    The doctrine of invited error precludes a party from appealing an error that the party invited or injected into the case. *In re Marriage of O'Connor*, 2023 COA 35, ¶ 24. At the end of the district court's oral ruling, father's counsel said, "[The parties are] going to have to be doing [parenting time] exchanges. We probably need, like, some address or at least some suggestion, picking up at the party's homes or wherever that goes, but without an address, that's not gonna be possible." The court asked where the exchanges should occur, and father's counsel suggested the police station. By

16

proposing the police station as the location for parenting time exchanges, father cannot now complain that the court erred by ordering exchanges to occur at the police station. *See id.*

¶ 31 Finally, father contends that the court erred by allowing mother to refrain from disclosing her residential address. To the extent father argues this was a modification of the 2023 order, we disagree. As best we can tell, mother had not been previously ordered to disclose her address, so the court's order merely maintained the status quo. And besides arguing that this part of the court's order amounted to a modification, father fails to explain why, or cite any supporting authority demonstrating that, the court's order was erroneous. Notably, the court found, and the record supports, that mother was a victim of father's domestic violence during the marriage and that she still had safety concerns. Thus, we perceive no error.

III. Disposition

¶ 32 We dismiss the part of father's appeal challenging the district court's alleged modification of the existing parenting time orders regarding supervision and testing. We otherwise affirm.

JUDGE FREYRE and JUDGE SCHUTZ concur.

17